[No. 20177. In Bank. — December 10, 1887.]

## THE PEOPLE, RESPONDENT, *v.* J. E. BROWN ET AL., APPELLANTS.

CRIMINAL LAW — PROCURING FALSE EVIDENCE — INCOMPETENCY OF AFFIANT — INTENT. — To constitute the offense of procuring a false affidavit to be used as evidence from a person known to be incapable of making an affidavit, there must have been an intent to produce false evidence for a fraudulent and deceitful purpose; allowing the affidavit to be made through carelessness, however gross, without such intent, is insufficient.

ID. — MEANS OF DISCOVERING INCOMPETENCY — KNOWLEDGE — INSTRUCTION. — In a prosecution for such an offense, an instruction which implies that a duty rested upon the parties procuring the affidavit to investigate as to the competency of the affiant, independently of any doubt or suspicion actually entertained by them, and if by the use of reasonable diligence they could have discovered the affiant's incompetency, such means of knowledge was equivalent to knowledge, is erroneous.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Tyler & Tyler*, and *W. B. Tyler*, for Appellants.

*Attorney-General Johnson*, and *J. N. E. Wilson*, for Respondent.

TEMPLE, J.—The defendants were prosecuted for procuring false evidence, to wit, an affidavit to be used on the motion for a new trial in *Sharon* v. *Sharon*, from a person who was to their knowledge incapable of making an affidavit.

The controversy at the trial was as to the capacity of the affiant, and whether, if she were incompetent, the defendants knew the fact. The last and most material question depended largely upon the degree of intelligence manifested, and whether from the very appearance of the affiant, the defendants must have known or suspected her want of capacity.

The instructions plainly imply that a duty rested upon the defendants,—one of whom was a notary employed to take the affidavit,—to investigate as to the competency of the affiant, independently of any doubt or suspicion actually entertained by them; and further, if by the use of reasonable diligence they could have discerned her incompetency, such means of knowledge is equivalent to knowledge. This cannot be the rule as to criminal responsibility. If the defendants were employed to procure the affidavit, and did not know or suspect the mental unsoundness of Mrs. Clark, and she apparently understood, assented to, and swore to it, I think they could not be held criminally liable, although had they investigated the matter they would have discovered her incompetency. To constitute the crime in question, there must be an intent to produce false evidence for a fraudulent and deceitful purpose; allowing it to be done through carelessness, however gross, without such intent, cannot constitute the offense.

In the course of a long charge, the court instructed the jury as follows: "And I therefore charge you,

that if you believe from the evidence, beyond all reasonable doubt, that on the eighteenth day of May said Isabella Clark was of unsound mind, and that these defendants, at the time of the taking of the affidavit testified to, knew, and had reason to believe and know, that at that time the said Isabella Clark was of unsound mind, and with said knowledge caused her to subscribe to said affidavit, with the intent to produce said affidavit, or allow it to be produced, in the action of *Sharon* v. *Sharon*, on said motion for a new trial, for any fraudulent or deceitful purpose, as genuine and true, then I charge you it was and is, within the purview of the Penal Code, a false affidavit, paper, and instrument in writing, and it is wholly immaterial whether or not the matters set forth in the affidavit were true or false. . . . . I therefore charge you, in plain words, that if it is established to your satisfaction, and beyond such reasonable doubt as I have explained to you, that the said Isabella Clark was, on the eighteenth day of May, 1885, a person of unsound mind, with mental powers so impaired, and her organs of sense so weakened, as to make her incapable of perception, and rendering her incapable of making known her perceptions to others, and that the defendants knew or had knowledge, or might have known by the exercise of ordinary observation and inquiry, of her mental unsoundness and incapacity, and knowing such to be her condition, etc., . . . . then the defendants, and each of them, are guilty as charged in the information, and it will be your duty to so find by your verdict."

And again the jury are told: "In regard to the question of knowledge, did these defendants know, at the time said affidavit was presented to said Isabella Clark for her to subscribe and swear to, that she was of unsound mind? And the question here arises, What is legal knowledge of a fact? There is great misapprehension in the popular mind on this subject. There seems

to be a prevalent notion that no one is chargeable with more knowledge than he chooses to have; that he is permitted to close his eyes upon all sources of information, and then excuse his ignorance by saying that he does not see anything. While it is true that a man is not supposed to have known facts of which it appears he was ignorant, yet if he has the means of ascertaining the true state of facts by the exercise of ordinary diligence, he is bound to do so, and if instead of so doing he is grossly negligent or culpable in not using such diligence, then his ignorance is no defense for any criminal act committed by him. In criminal cases as well as civil affairs, every man is presumed to know everything that he can learn upon fair and reasonable inquiry, when he has facts in his possession which suggest the inquiry, that is, when the surroundings are such as to put him upon inquiry."

If such a rule ever obtains in a criminal case, it certainly can have no application to an offense of this character. The rule is *nullus reus nisi mens sit rea.* The rule of *caveat emptor* as to notice cannot apply to criminal responsibility. It is not at all analogous to the rule according to which it is sometimes conclusively presumed that one intended the natural and obvious consequences of his acts, and will not permit him to say he did not know that the consequences would follow. Nor is it like those cases of involuntary manslaughter in which carelessness or recklessness are held to be criminal.

Undoubtedly there are cases in which language similar to that contained in the charge of the learned judge is used; but they are all cases in which a duty is imposed upon the person to inquire, and not to do so is itself a dereliction. Thus a woman who has been married took a second husband. On being charged with bigamy, she averred that she thought her husband dead. It was held that her belief was no defense. Here

she knew herself disqualified to marry unless the fact —of the death of her husband—existed. Unless she knew such fact, she ought not to have married.

Another case was the sale of impure milk. It was held that defendant could not say he did not know it was impure,—he is presumed to know, for he ought to have known.

But in this case a special intent was required to make out the offense. It is like the offense of receiving stolen goods, larceny, or an assault with a particular intent. If one acting in good faith takes the property of another believing it to be his own, he is not guilty of larceny, although the mistake is the consequence of gross carelessness.

So the receiver of stolen goods must know they are stolen, and it will not do to say that his failure to know through gross negligence is equivalent to knowledge. If a case could arise, however, in which it should appear that he suspected the fact and abstained from inquiry lest he should know, knowledge might be inferred. One must have some knowledge of the fact before he can close his eyes lest he may know. Of course I admit the relevancy of proof of opportunity as bearing upon the issue of actual knowledge; but there must be such actual knowledge, and facts which would ordinarily suggest the inquiry are not sufficient. The jury must believe that they did in fact suggest the inquiry to the defendant.

For these reasons, I think the judgment should be reversed and new trial ordered.

So ordered.

Paterson, J., Sharpstein, J., McKinstry, J., Searls, C. J., and McFarland, J., concurred.