[Crim. No. 890.    Department Two.—May 29, 1902.]

THE PEOPLE, Respondent, v. B. F. GOODIN, Appellant.

CRIMINAL LAW—MALICIOUS INJURY TO PUBLIC HIGHWAY—ABSENCE OF CRIMINAL INTENT—CHANGE OF ROAD.—Where it appears from the uncontradicted facts that the defendant charged with malicious injury to a public highway was merely closing up an old road over his land, after the board of supervisors had altered the route of the road between the same termini, and had constructed a new road across the defendant's land in another place, the defendant had a right to believe that the old road over his land had been abandoned, and that he had a right to close it up and fence it in, and, if so believing, he could not have had the intent to commit the crime charged, of which malice is a necessary ingredient.

ID.—IMPLICATION FROM ALTERATION OF ROAD—ABANDONMENT OF OLD ROAD.—The alteration of the route of a road, by the construction of a new road to take the place of the old one, implies that the old road is abandoned and ceases to exist as a highway. It cannot be assumed that the supervisors intended to maintain both roads.

ID.—ERROR OF COURT—INSTRUCTIONS—EXCLUSION OF EVIDENCE.—It was error for the court to instruct the jury to the effect that the belief of the defendant, that he had the legal right to do what he did, if he had in fact no such right, did not justify his acts, and that it is no defense for the defendant to claim that he thought or had an honest belief that he had a right to dig up or injure the public highway, and to strike out the defendant's testimony stating the

grounds of his belief that he had a right to fence up the road, and to exclude evidence that other portions of the old road had been fenced and plowed, which, if proved, would tend to show an actual abandonment of the old road.

Id.—Ignorance of Law, When a Defense.—Ignorance of law, if it renders impossible the special state of mind required to constitute the offense, takes it away, the same as any other cause having that effect.

APPEAL from a judgment of the Superior Court of Colusa County and from an order denying a new trial. H. M. Albery, Judge.

The facts are stated in the opinion.

B. F. Howard, for Appellant.

Tirey L. Ford, Attorney-General, A. A. Moore, Jr., Deputy Attorney-General, and I. G. Zumwalt, District Attorney, for Respondent.

HAYNES, C.—The information charged that the defendant, on May 17, 1901, did willfully, maliciously, and feloniously injure a public highway (naming and describing it), by digging up, displacing, and removing the earth from the roadbed thereof. He was tried and found guilty and sentenced to imprisonment in the county jail for the period of four months; and he appeals from the judgment and from an order denying a new trial.

This information is laid under section 588 of the Penal Code, which provides as follows:—

"Every person who maliciously digs up, removes, displaces, breaks, or otherwise injures or destroys any public highway or bridge, or any private way laid out by authority of law, or bridge upon such highway or private way, is punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding one year."

As to the fact of digging, and that defendant's purpose in doing it was to close up the road and prevent the use of it, there is no controversy. His defense, briefly stated, is, that he believed in good faith that he had a right to fence it up for his own benefit and convenience; and whether such belief constitutes a defense in this criminal action is the principal

question, and is presented in the following instructions given to the jury at the request of the prosecution, and by rulings upon questions of evidence duly excepted to:—

"12. If the jury find from the evidence that the road referred to in the information is a public highway or road, and has been used as such for fifteen years or more, and if you further find from the evidence that the defendant, B. F. Goodin, maliciously dug up, removed, displaced, broke, or otherwise injured or destroyed said public road, and you further find from the evidence that the defendant believed he had a legal right to injure or destroy the same, when he had no legal grounds for such belief, and when he had in fact no such right, the fact of such belief does not justify the said acts of the defendant.

"13. It is no defense for the defendant to claim that he thought, or had an honest belief, that he had a right to dig up or injure said public highway."

The road upon which the alleged injury was done is described in the information as "a public highway leading from the 'Mountain House' to the town of Leesville, commonly known as the Old Leesville Grade." It was regularly laid out and established in 1879, and had been improved and used as a public highway down to the date of the alleged injury committed by the defendant. Defendant's son owned three hundred and twenty acres of land through which said road ran, which land was occupied by the defendant under a lease. Prior to the date of the act charged, the board of supervisors laid out a new road, called the New Leesville Grade, between the termini of the old grade above stated. It was completed and accepted by the board in the fall of 1900. The new road left the old one about three hundred yards from Goodin's said land, and, as testified by Mr. Thompson, "comes into the old grade for a short distance on the summit, about three fourths of a mile on a straight line from where it leaves it on this side." Both roads passed through defendant's said land.

Mr. Perdue testified that his land is on part of the old grade about five miles from defendant's place, that the new road passes through his (Perdue's) land, in places not more than one hundred yards from the old grade, and that the new grade was constructed to take the place of the old one.

Mr. Rathbun, one of the supervisors called by the prosecu-

tion, testified that he was interested in a stage line that went over this road, that "his driver went up the old grade most of the time"; that he thought most of the people traveled the old grade at that time; that the new grade had just been repaired and the people were afraid of it.

It is quite clear that the construction of what is called the new road, or grade, was but a change or alteration of the old road, or grade. The general route and termini were the same. There was no evidence that the convenience or necessities of the public required the existence of two roads, nor any hint that it was the intention of the board of supervisors to maintain both. It cannot be assumed that it was intended to burden the county with the expense of constructing a new road parallel to the old one, between the Mountain House and Leesville, in addition to the expense of maintaining the old one. The change or alteration of a material thing implies the existence of that thing thereafter only in its new or different form. It was testified by Mr. Perdue, through whose land it also ran, that the new grade was constructed to take the place of the old one, and this fact was not controverted. The statute authorizes the board of supervisors to "alter" an existing road, but to say that a road may be altered and the old road continue to exist in the altered part as it was before, is an absurdity. If the new road was constructed to take the place of the old one, it is implied that the old one is abandoned and ceases to exist as a highway. Whether it would be so held in an action of trespass, the whole record being before the court, we need not decide; but upon the uncontradicted facts before us it is clear beyond question that the defendant had ample grounds for his belief that the old road was abandoned, and that he had a right to fence it up with his other lands for his own convenience and benefit, and so believing he could have had no intent to commit the crime, of which malice is a necessary ingredient.

Counsel for respondent cites section 294 of Bishop's New Criminal Law, where the maxim *Ignorantia juris non excusat* is quoted as "a rule in our jurisprudence." The same author, however, (at section 297,) further says: "There are crimes which cannot be committed of general malevolence, but they require a particular evil condition of the mind, existing in actual fact. And ignorance of the law, the same as any other

cause, if it renders the special state of mind impossible, takes away the offense. Thus, larceny exists only where there is an intent to steal, and an indispensable element in this intent is the knowledge that the property taken does not belong to the taker. Therefore, if all the facts concerning the title are known to him, and so the question is simply of law whether or not the property is his, still he may show, and it will be adequate in defense, that he honestly believed it his through misapprehending the law." In this connection the author applies the same principle to cases of malicious mischief, perjury, official corruption, and some other offenses. (See, also, 2 Bishop's Criminal Law, sec. 851; *People* v. *Eastman,* 77 Cal. 171; *State* v. *Bond,* 8 Iowa, 540; *State* v. *Homes,* 17 Mo. 379;[1] *McCourt* v. *People,* 64 N .Y. 583.) In the case last cited it is said: "It is the criminal mind and purpose going with the act which distinguishes a criminal trespass from a mere civil injury."

The court erred not only in the instructions hereinbefore quoted, but in striking out defendant's testimony stating the grounds of his belief that he had a right to fence up the road, and in excluding evidence that other portions of the old road had been fenced and plowed, which, if proved, would tend to show an actual abandonment of it. We also think, with appellant, for reasons hereinbefore stated, that the evidence does not justify the verdict, and that the judgment and order should be reversed.

Smith, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are reversed.

Henshaw, J., Temple, J., McFarland, J.

Hearing in Bank denied.

[1] 57 Am. Dec. 269.