[Crim. No. 2602. Second Appellate District, Division Two.—January 28, 1935.]

THE PEOPLE, Respondent, v. WAYNE TAYLOR, Appellant.

Wayne Taylor, *in pro. per.*, for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

WILLIS, J., *pro tém.*—Appellant was found guilty by the court below, William S. Baird, judge presiding, sitting without a jury, of the crime of knowingly and feloniously having in his possession a certain cartridge containing and capable of emitting tear gas, contrary to the provisions of Act 2955, Deering's General Laws (vol. 1, p. 1423). From the judgment entered by Thomas P. White, judge presiding, this appeal is taken, appellant relying upon two contentions: (1) insufficiency of evidence to establish the fact that he knew the cartridges in his possession contained and were capable of emitting the substance known as tear gas, and (2) error in admission of evidence over his objection.

On March 13, 1934, appellant was taken into custody by officers, who searched his person and in an outside coat pocket found three loaded and unexploded cartridges containing the substance known as tear gas and capable of emitting such substance by a firing of the cartridge from a .38 caliber special revolver, a billy club or a fountain pen gun. Being asked if he knew what the cartridges contained he stated that he was not sure—that he had not used them yet. The officers searched his person and clothing, his automobile and his apartment and found no revolver, no billy club or fountain pen gun, nor any instrument by which such cartridges could be readily exploded or fired.

On behalf of defendant a witness, M. D. Knott, who resided with defendant, testified that on March 11, 1934, he saw the latter at his automobile with the seat upside down, and that defendant showed him these cartridges and said, "Do you know anything about them?" and "What are they?"; that the witness replied, "They look like blank cartridges." Defendant testified that on March 11, 1934, he found these three cartridges lying in a crack back of the seat of his automobile; that he showed them to Knott and asked him if he knew what they were or who left them there; that he had loaned the auto the night before to his brother Aubrey, and that he asked his brother if he had left them there or knew anything about them and that he said he did not. He testified that he thought they were blank cartridges and that he had never had a fountain pen gun that would discharge such cartridges. Aubrey Taylor testified

that defendant showed him the cartridges on March 11th and asked him if he had left them in the auto.

In rebuttal the district attorney called as a witness one Jack Poe, and asked him if he had ever seen defendant in possession of a fountain pen that would shoot tear gas shells, to which the witness answered, "Not that I know of." He testified he might have seen him with a fountain pen. He was then asked if he did not make a statement to an officer to the effect that defendant did have a fountain pen that would shoot these tear gas shells, to which he answered "No." Over defendant's objection the court then permitted the district attorney to ask the witness if he had not told certain officers that defendant had a pen that would discharge tear gas shells, and the court also denied a motion to strike such testimony, based on the ground that it was an attempt by the prosecuting attorney to impeach his own witness. The district attorney did not claim surprise in respect to the witness' first answers, but the court overruled the objections and denied the motion on the assumption that the prosecutor was taken by surprise or he would not be asking the question. Thereupon the district attorney called three officers in succession, who were permitted to testify over defendant's objection that on March 13, 1934, they were present at a conversation with the witness Jack Poe, defendant not being present, in which Poe stated that defendant had had a fountain pen which would shoot tear gas shells.

In establishing the crime charged herein by proofs, it was essential to prove that the defendant knew that the cartridges in his possession contained and were capable of emitting the substance known as tear gas. Knowledge thereof constitutes part of the *corpus delicti*. Such knowledge cannot be presumed; it must be established as a fact by competent evidence. The knowledge made a part of this offense by statute is not analogous to the intent which constitutes an essential in certain crimes and as to which the rule that one intends the natural and obvious consequences of his acts applies. In this case a special intent was required to make out the offense, amounting to knowledge of the character and contents of the proscribed cartridges. (*People* v. *Brown*, 74 Cal. 306 [16 Pac. 1].) That it was true that the cartridges contained tear gas does not alone support an inference that the possessor thereof had knowl-

edge of that fact. (*People* v. *Peloian,* 95 Cal. App. 96 [272 Pac. 304].)

It is clear from a reading of the transcript herein that the sole proof on the part of the prosecution which tended to establish the crime charged was the fact of possession by defendant of the proscribed cartridges. There was no proof that he had knowledge of their character as tear gas shells, nor was there any evidence from which such knowledge could be inferred. ▮ It thus becomes plain what the effect of the testimony of the officers given in rebuttal would be. By the use of hearsay evidence the district attorney sought to prove that defendant had had in his possession a tear gas fountain pen gun. This, if true, would establish a basis for an inference of knowledge on the part of defendant of the contents and use of the cartridges found in his possession. Hearsay evidence is not as a rule competent to establish any specific fact which in its nature is susceptible of being proven by witnesses who can speak from their own knowledge. (1 Greenleaf, Ev., sec. 99; *People* v. *Nagy,* 199 Cal. 235 [248 Pac. 906].) Certainly it cannot be contended herein that the district attorney could rightfully be permitted to prove by the officers in the first instance that a third party had told them that defendant had had a tear gas fountain pen gun in his possession. It follows that what might not be done directly cannot be done by indirection—by the expedient of placing the third party on the witness stand, eliciting a denial of knowledge of the fact desired to be proved and then by process of impeachment attempting to prove by the third party's declarations that defendant had been in possession of the tear gas fountain pen gun. The error in admitting such proof is patent, and its prejudicial nature and effect is manifest. Without proof of the fact of possession by defendant of an instrumentality capable of discharging these cartridges found in his pocket there was no sufficient evidence in this case to sustain a conviction.

For the error in admitting such evidence and because of insufficiency of evidence to sustain the finding of guilt, the judgment must be reversed, and it is so ordered.

Stephens, P. J., and Crail, J., concurred.