[Crim. No. 13626.    Second Dist., Div. One.    Apr. 29, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. CHARLES JAMES AUTTERSON, Defendant and Appellant.

Daniel L. Dintzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philippe J. Monet, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—A jury found defendant guilty of a violation of section 12420, Penal Code (possession, offering for sale and sale of tear gas). He appeals from the judgment.

About November 20, 1966, there came to the attention of Officer Egger, Beverly Hills Police Department, an advertisement in the Home Section, Los Angeles Times, Sunday Edition, entitled "Defender of Women—It Works." Under the title were certain printing and a black and white drawing depicting a hand holding an object pointed toward the face of a person reeling back in apparent pain; it gave a Beverly Hills address. After contacting an intelligence officer, Los Angeles Police Department, and obtaining one of the cartridges, Officer Egger went to the Business License Bureau, Beverly Hills; he inspected the records and found no business license issued to the company named in the advertisement.

Around 1 p.m. on November 23, 1966, Officers Egger and Corbett went to the address indicated in the ad. Defendant's name and that of another person were listed on the mail box for apartment 4. The officers went to apartment 4; the door was open but the screen door was closed. In response to Officer Egger's knock, defendant came to the door and inquired whether he could help them. Officer Egger replied yes, showed him his badge and identification card and said: ".We are police officers, we would like to talk to you." Defendant opened the screen door and said, "Come on in." In the apartment Officer Egger showed him the cartridge on which was printed, "Defender of Women," and asked, "Do you sell these? Are you the man that sells these?"; defendant replied, "Yes," and walked into the kitchen. He saw defendant reach into a large cardboard box and remove a similar cartridge; defendant said, "Yes, here it is." The officer then arrested him and advised him of his constitutional rights. Later outside the police building Officer Egger and Lieutenant Cork shot some of the contents out of the little cartridge taken from defendant and observed a spray which went approximately 12 to 15 feet. Inadvertently they sprayed the contents around the corner of the intake of the air conditioning unit of the police department; when they returned to the building they observed about seven employees coughing, rubbing their eyes and complaining. An analysis of the contents of the cartridges

revealed a peppery-type substance—oleoresin capsicum; in the opinion of the forensic chemist should this substance be discharged on a sensitive part of the body (face, eyes, nose or mouth) it would produce physical discomfort.

Appellant contends that the evidence is insufficient to establish his knowledge that the cartridges in his possession contained and were capable of emitting tear gas.

According to section 12420, Penal Code, any person who "knowingly sells or offers for sale, possesses or transports any form of shell, cartridge, or bomb containing or capable of emitting tear gas, or any weapon designed for the use of such shell, cartridge or bomb, . . . is guilty of a public offense. . . ." Section 12401, Penal Code, defines tear gas, not as any specific chemical, but to "apply to and include all liquid, gaseous or solid substances intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispersed in the air, . . ."

On the necessity for proving the knowledge required by section 12420, the court said in *People* v. *Taylor,* 4 Cal.App.2d 220, 222-223 [40 P.2d 895]; "In establishing the crime charged herein by proofs, it was essential to prove that the defendant knew that the cartridges in his possession contained and were capable of emitting the substance known as tear gas. Knowledge thereof constitutes part of the *corpus delicti.* Such knowledge cannot be presumed; it must be established as a fact by competent evidence. The knowledge made a part of this offense by statute is not analogous to the intent which constitutes an essential in certain crimes and as to which the rule that one intends the natural and obvious consequences of his acts applies. In this case a special intent was required to make out the offense, amounting to knowledge of the character and contents of the proscribed cartridges. (*People* v. *Brown,* 74 Cal. 306 [16 P. 1].) That it was true that the cartridges contained tear gas does not alone support an inference that the possessor thereof had knowledge of that fact. (*People* v. *Peloian,* 95 Cal.App. 96 [272 P. 304].)"

That defendant knew that the cartridges in his possession contained or were capable of emitting a substance defined as tear gas in section 12401, Penal Code, is established by his own testimony. He testified that he had in his possession boxes of cartridges for the purpose of sale; that for the purpose of facilitating their sale, he placed the advertisement in the Los Angeles Times showing a drawing of the cartridge pointed toward the face of a person reeling back in apparent pain; and that he was familiar with the words on the cart-

ridges "When sprayed directly into face of attackers, will immediately render them harmless," and "Warning: irritating to eyes, nose, and skin; oleoresin capsicum." Thus, according to defendant's own admissions he had in his possession cartridges and offered them for sale knowing that they contained a substance which, when sprayed in the face of an attacker—"dispersed in the air"—was capable of producing "temporary physical discomfort"—immediately rendering him harmless. This is all the statute requires. (§§ 12420, 12401, Pen. Code.) Neither the statute nor *People* v. *Taylor,* 4 Cal.App.2d 220 [40 P.2d 895], requires that an accused know the chemical nature or makeup of the substance or that it constitutes "tear gas," as long as he knows that it is intended to "produce temporary physical discomfort . . . through being . . . dispersed in the air." (§ 12401.) Thus, the proof is sufficient to establish that defendant knew that the cartridges in his possession which he was offering for sale contained and were capable of emitting a substance defined as tear gas. (See *People* v. *Hurst,* 256 Cal.App.2d 89, 93-94 [63 Cal.Rptr. 921].)

The fact, if it was a fact, that defendant did not know the possession and sale of cartridges emitting this substance to be in violation of the law is no defense. He claims that he made an offer of proof relative to certain of his activities prior to going into business,[1] for the purpose of showing his

---

[1] "Defendant would offer to prove by the testimony of defendant Charles Autterson, and before putting on the witness would ask permission to refer to this testimony in opening statement, of defendant, to the effect that Mr. Autterson, defendant, upon learning of the existence of the articles with which he is here charged with selling and possessing, wrote to the manufacturer, asking if in fact any tear gas was involved in these weapons, and received replies by mail to the effect that no tear gas was involved in the ingredients.

"Thereafter, the defendant would also testify that he consulted with the Police Commissioner of Los Angeles City, Police Commissioner's office, the office of the Police Commissioner in the Los Angeles Police Department, headquarters in downtown Los Angeles, speaking there to a captain, and that the captain stated to the defendant, in reply to his questions, that in fact the articles which he proposed to offer for sale were not tear gas, were not prohibited by any local or State ordinance or statute.

"Thereafter, defendant went to the Beverly Hills branch of the United States Post Office, consulted with the person in charge of that post office, and was told, in response to his queries, that there was no postal regulation, or legal reason why defendant could not use the post office—pardon me—the United States mails to transport these articles which he proposed to sell and distribute, and that in fact the United States Post Office supplied to its employees [*sic*] the very same articles containing the very same ingredients for protection from dogs."

''good faith, belief that it was permissible to possess and sell the guns that he had'' (A.O.B. p. 11); and the trial judge erred in rejecting the offer of proof.

The offer of proof amounted to a showing that defendant did not know that it was illegal to possess the cartridges and offer them for sale, and that he believed his acts to be lawful. Section 12420, Penal Code, does not afford defendant the defense of ignorance of the law or lack of knowledge of the illegality of his conduct; it requires only that he ''knowingly'' possess, sell or offer to sell a cartridge capable of emitting tear gas as defined in section 12401. ''Knowingly'' as used therein is defined in section 7, subdivision 5, Penal Code; it ''imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission; . . .'' ▮ Pertinent is the discussion in *People* v. *Daniels,* 118 Cal.App.2d 340, at page 343 [257 P.2d 1038] : ''*Knowing possession* is not to be confused with criminal intent or with knowledge that an act is a violation of law. The latter signify an evil purpose. Knowing possession or 'knowingly' signifies knowledge of the existence of a fact or facts—in this case, knowledge that the firearm was a machine gun. Section 7 (5) of the Penal Code says : 'The word ''knowingly'' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission; . . .' ▮ When used in a statute creating a criminal offense the word 'knowingly' must be construed to import only knowledge of the facts. It has no reference to knowledge of the law. (*People* v. *Burns,* 75 Cal. 627, 630 [17 P. 646].)'' Thus, defendant's asserted ignorance of the unlawfulness of his acts is no defense as long as he knew of the existence of the facts which bring his acts within the provisions of sections 12420 and 12401, Penal Code. The evidence was properly excluded.

It is interesting to note that while the trial judge rejected the offer of proof, he permitted defense counsel to ask defendant certain related questions, the answers to which could only convey to the jurors, if they believed him, that he did all of the things he offered to prove. Actually he accomplished indirectly what the court prevented him from doing directly. Defendant testified that the existence of the cartridges was brought to his attention through a classified advertisement in the Los Angeles Times; he purchased them from two firms mentioned in the advertisement—one in Akron, Ohio, the

other in New York City; he communicated with them relative to and made inquiries concerning the cartridges; he inquired locally—Los Angeles Police Department, Captain Hoye and Sergeant Ryan, and Superintendent Edgar, Beverly Hills Post Office—concerning the cartridges he contemplated selling; and he did not knowingly sell or offer for sale or possess a cartridge containing tear gas.[2]

---

[2] "By Mr. Crigger [defense attorney]: At any rate, Mr. Autterson, after reading a classified ad in the Los Angeles Times, I take it that you wrote or in some way communicated with these companies back east; is that correct?

A Yes.

Q And did you communicate once or more than once with them?

A More than once.

Q Did you make several inquiries of them concerning the product?

A Yes.

Q And I take it you received answers by way of the mails?

A Yes.

Q Then after writing to the companies and receiving answers from the companies, did you make any further inquiries locally concerning the product?

A Yes.

Q Whom did you consult here in California?

A Police Commissioner's Office.

Q Los Angeles Police Commissioner?

A Los Angeles Police.

Q Is that downtown Los Angeles?

A Yes.

Q And with whom did you talk at that place?

A Sgt. Hoye—or excuse me, Sgt. Ryan, and a Capt. Hoye.

Q And did you consult with Capt. Hoye and the sergeant on one occasion or more than one occasion?

A On two occasions.

Q And after having two conferences with Capt. Hoye and the sergeant whom you named, did you then consult any other local agencies or agencies around here?

A Yes.

Q And what agencies did you contact?

A Beverly Hills Post Office.

Q And do you know with whom you spoke there?

A Superintendent Edgar.

Q And how many times did you confer with Superintendent Edgar, concerning——

A Once.

Q That was concerning this product which you contemplated dealing in or selling; is that right?

A Yes, sir.

Q Did you have any further conferences with any agencies or officials in the City or County?

A The business tax license department of the Los Angeles City Hall. I spoke to Mrs. Cone, spelled C-o-n-e, in regards to——

. . . . . . . .

Q By Mr. Crigger: Mr. Autterson, on or about the 23rd day of November, 1966, at and in the County of Los Angeles, State of California, did you willfully, unlawfully, and feloniously, and knowingly sell and offer for sale and possess a shell, cartridge, and bomb containing and

█ Predicating his argument on *People* v. *Goodin,* 136 Cal. 455 [69 P. 85], appellant claims that the trial judge failed to properly instruct the jury in giving CALJIC 74 that "When the evidence shows that a person voluntarily did that which the law forbids from which it declares to be a crime, he has no defense in the fact, if it be a fact, that he did not know that his act was unlawful or that he believed it to be lawful." He submits that this instruction was equivalent to a directed verdict for the People. While the Supreme Court reversed the conviction in *People* v. *Goodin,* 136 Cal. 455 [69 P. 85], condemning certain instructions including the one herein (p. 457), *Goodin* is not controlling because there a necessary element of the crime was malice—malicious injury to a highway. Where malice is an element of the crime the state of mind of the defendant and his defense of good faith are material and relevant.

█ Further, appellant claims that it was error to deny his motion for mistrial. Prior to instructing the jury the judge informed the jurors that they might be permitted to view the exhibits in the jury room but warned them "not, under any circumstances, [to] activate any of these capsules."[3] The mistrial was urged on the ground that the admonition amounted to a judicial opinion to the effect that the articles contained material dangerous to humans and tended to prejudice the jury.

It was only reasonable to prohibit the jurors from activating the cartridges, and the judge properly exercised his discretion in giving the warning. Nor can it be deemed to be prejudicial in the light of the uncontradicted evidence establishing that the substance in the cartridges would, if discharged produce physical discomfort, and that the cartridges were labeled "When sprayed directly into the face of attackers, will immediately render them harmless" and "Warning: irritating to eyes, nose and skin; oleoresin capsicum." There was no denial that the material would in fact cause physical discomfort, and defendant admitted placing the advertisement

capable of emitting tear gas and a weapon designed for the use of such shell, cartridge and bomb?

THE COURT: You may answer that 'Yes' or 'No.'

A No."

[3] "I will say to the jury that we have certain exhibits, the principal one of which would be these cartridges. And if the jurors ask that any or all of the exhibits be received into the deliberation room for your examination, I will permit you to see it, with this caution: that it is sent to you only for the purpose of viewing it and of reading any reading matter that is on it. And please do not, under any circumstances, activate any of these capsules."

showing a person reeling back in apparent pain from the effects of these cartridges.

Finally, appellant submits that his statements given to Officer Egger before he was advised of his constitutional rights were inadmissible. (*Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].) He claims that the investigation had begun to focus on him and at that time he was in custody—the officers showed him their badges and identification and informed him that they wished to talk to him, and he was led by this to believe that his freedom was restricted. He relies on *People* v. *Arnold*, 66 Cal.2d 438, at page 448 [58 Cal.Rptr. 115, 426 P.2d 515] : ". . . that custody occurs if the suspect is physically deprived of his freedom of action in any significant way or is led to believe, as a reasonable person, that he is so deprived."

Defendant neither testified concerning the circumstances surrounding his statements nor claimed that he was led by the officers to believe that he was being deprived of his freedom of action. Further, the uncontradicted evidence supports neither the inference that he was in custody nor any finding of the advent of the accusatory stage. When Officer Egger went to defendant's apartment he had in his possession a cartridge he had obtained from an intelligence officer, Los Angeles Police Department, who told him that in his opinion it fell under the category of tear gas; he did not testify that he had formed such an opinion. Thus, they proceeded to investigate the matter. At the address given in the advertisement, they found defendant's name and that of another person on a mail box for apartment 4, then knocked on the door of apartment 4; after identifying themselves they told defendant they "would like to talk to" him. They entered the premises on the invitation of defendant. At this time the officers had not yet determined that the cartridges were tear gas and did not know who was advertising the sale of the cartridges. The names of two persons were on the mail box so they asked defendant if he was the person who sold the cartridges; defendant answered, "Yes. Can I interest you in buying one?" This does not indicate that defendant believed or was led to believe that the presence of the police was such as to physically deprive him of his freedom of action; to the contrary, it is apparent that he was under the impression that the officer might be a customer and was eagerly trying to make a sale. After a discussion concerning a Beverly Hills business license, the officers asked him if he had any of the cartridges in his apartment and he answered yes, walked into the kitchen, removed one

from a cardboard box and said, "Yes, here it is." Then the officers arrested him.

During the foregoing defendant was neither under arrest nor in custody. The officers went to the premises to investigate the advertisement; they were trying to determine whether a crime had been committed and, if so, who had committed it; and Officer Eggers' preliminary questions in furtherance of their investigation had none of the characteristics of a process of interrogation that lends itself to eliciting incriminating statements. (*People* v. *Sanchez,* 65 Cal.2d 814, 823 [56 Cal. Rptr. 648, 423 P.2d 800] ; *People* v. *Cotter,* 63 Cal.2d 386, 393 [46 Cal.Rptr. 622, 405 P.2d 862] ; *People* v. *Mercer,* 257 Cal. App.2d 244, 248-249 [64 Cal.Rptr. 861]; *People* v. *Ford,* 234 Cal.App.2d 480, 487, 490 [44 Cal.Rptr. 556].) The statements were properly received in evidence.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 26, 1968.