[Civ. No. 9979.  Fourth Dist., Div. One.  Feb. 24, 1970.]

JOHN CLARENCE COOK et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

J. Perry Langford and James M. Gattey for Petitioners.

No appearance for Respondent.

James Don Keller, District Attorney, Richard H. Bein and M. James Lorenz, Deputy District Attorneys, for Real Party in Interest.

## OPINION

**GRIFFIN, J.**\*—Petitioners were each jointly charged in a grand jury indictment returned on July 22, 1969, as follows:

Count I charged that on May 6, 1969, petitioners John Clarence Cook and Sam Frank Urbana, did unlawfully have in their possession a weapon designed for the use of a shell containing and capable of emitting tear gas, in violation of Penal Code section 12420[1]; and count II charged that on the same day they did unlawfully have in their possession a tool with intent to feloniously break and enter into a building, in violation of Penal Code section 466. They entered pleas of not guilty and moved to set aside the indictment under Penal Code section 995. Upon denial of their motions each filed a petition for writ of prohibition and petitioner Cook added a prayer for a writ of mandate against the superior court, seeking to restrain the court from taking any further steps, including trial hereafter, and to issue a writ commanding it to set aside and dismiss the indictment and remand the matter to the municipal court for a preliminary examination.

The reporter's transcript of the proceedings before the grand jury contained considerable hearsay evidence. However, if the competent evidence would lead "[A] man of ordinary caution or prudence . . . to believe and conscientiously entertain a strong suspicion of the guilt of the accused," the indictment will not be set aside. (*Bompensiero* v. *Superior Court,* 44 Cal.2d 178, 183 [281 P.2d 250].)

On May 5, 1969 Deputy Sheriff Breen was investigating a three-room burglary at La Costa Country Club which was reported to the officer to have occurred between 9 a.m. and 12:30 p.m. while the lady occupants were attending a spa program and the men were playing golf. It was further reported the occupant of Room 433 had lost $550 in cash and $7,000 in jewelry and that she had seen a "Puerto Rican type" individual, heavy-set, standing on the stairway who frightened her. It was reported to Breen that a man bearing that description was in the cocktail lounge with another man. The two men appeared to be out of place and unknown at the club. Breen inquired of the bartender, who directed his attention to one A. Knight in Room 415. A check of the hotel register revealed that Mr. and Mrs. A. Knight had registered in Room 117 and the next day had changed to Room 415. On May 6, 1969, a bellboy reported serving breakfast to two men in pajamas in Room 415 and that there was no female there. The officer notified the clerk to let him know if the occupants of Room 415

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Since the indictment was returned Penal Code section 12420 has been amended. (Stats. 1969, ch. 1231, p. 2386.)

checked out, and at 2:30 p.m. on that day, i.e., May 6, 1969, he was so notified.

An officer named Cornette occupied a room across the way from Room 415 and had it under surveillance, using binoculars. He observed the maid enter the room, and later saw the two male subjects enter, at which time the maid departed, leaving the door open. Cornette saw one of the subjects, later identified as Cook, walk to the luggage stand near the door; pick up a large brown suitcase; carry it back to the middle of the room; and place it on a table. The other suspect, later identified as Urbana, walked over next to him. While their backs were toward the officer the suitcase was opened; then closed; and Cook took it back to the luggage rack. Later Breen and Cornette went to Room 415. Breen knocked on the door, which was opened by Cook; identified himself as an officer; said he was conducting an investigation; in response to an inquiry of Cook whether he might talk to him, was invited into the room; entered and saw Urbana, who also was in the room. Both petitioners identified themselves. Breen asked Urbana if he ever had been in jail, and the latter replied he was not going to answer any questions. Thereupon Breen left the room; called his superior at the police station; gave the latter a description of the petitioners; was advised they were known jewel thieves from Miami; was directed to place them under arrest for burglary; and arrested them as directed. Simultaneously Cornette, who was with Breen, arrested petitioners for possession of tear gas because, after Breen left the room Urbana said "I might as well pack my clothes while I am waiting"; at that time he picked up a large brown suitcase, being the one previously seen through the door from the room across the way, put it on the bed, and started placing personal articles in it. Cornette then saw "a black leather article with a black cannister in it" which "appeared to be a mace aerosol gas cannister." After arresting petitioners for possession of tear gas Cornette searched them and found in their wallets a black plastic strip and a small piece of metal (a "shim") in each wallet.

Sergeant Boutt testified Breen called him in regard to the two suspects and gave him their names, which he recognized; he told Breen they were associated with known jewel thieves from Florida operating in Los Angeles; he called Miami and Los Angeles for confirmation; and the confirmation greatly exceeded his expectations. Boutt also testified he examined the Mace cannister, which he identified as a Chemical Mace Mark IV; that Officer Breen sprayed some of the contents on his (Boutt's) finger and it created an irritation of "my eyes"; that they started to water and he felt mucus building up and he washed it off; that he had come in contact with Mace before; and that the contents of the cannister reacted the same way.

The Mace cannister was marked Exhibit 4 in evidence and, by our order, has been transmitted to this court.

Officer William Lee testified he was an officer from Los Angeles in the Scientific Investigation Division since 1951, and had qualified as an expert in the field of locks, locksmithing, etc., in different courts and in the trade; that he was familiar with the "shim" method of disassembling locks and their use; that Exhibits 5 and 6 in evidence before the grand jury were called "curved shim stock and they are distributed by the HP Company"; and that they are curved and manufactured solely for the use of the lock industry in disassembling a lock cylinder. He also testified how a "shim" is used and operates; that with a "shim" and another instrument called a "follower" one can remove the plug; that he is aware of the use of different procedures in burglaries; and that this type of tool is used by professional burglars.

After petitioners were arrested on May 6, 1969, the People filed a complaint in the municipal court charging them with the same offenses alleged in the grand jury indictment. Petitioners were arraigned on May 8, 1969. Bail was fixed and petitioners were released on the same day. A preliminary examination was set for May 20 and continued by agreement of the parties to July 28. On July 22 petitioners were indicted by the grand jury, the complaint in the municipal court was dismissed on motion of the district attorney, and petitioners made bail under the indictment. Subsequently petitioners moved to set aside the indictment under Penal Code section 995 upon the grounds (1) there was a lack of reasonable or probable cause to indict them and the evidence relied upon was obtained by an unreasonable search and seizure; (2) the filing of the complaint in the municipal court followed by a dismissal and filing of an indictment by the grand jury deprived them of a preliminary examination, thereby denying them their right of cross-examination and other constitutional rights; (3) the superior court was without jurisdiction of the misdemeanor charge of possession of a burglar's tool in violation of Penal Code section 466 because that misdemeanor charge was improperly joined with the felony charge of violating Penal Code section 12420, and the evidence did not show the offenses were connected in their commission as required by Penal Code section 954.

It is claimed in the petition that the trial judge indicated the offense in count I was mischarged, but denied the motion to set aside the indictment because he believed it could be amended by the district attorney without returning it to the grand jury. (See Pen. Code, §§ 997, 998, 1009; *People v. Foster,* 198 Cal. 112, 120 [243 P. 667]; *In re Crowley,* 51 Cal.App.2d 234 [124 P.2d 329].)

Petitioners raise the same questions in this proceeding with some elaboration.

First, it is argued there was no substantial evidence presented to the

grand jury that Exhibit 4 was "a weapon designed for the use of a shell" as defined in former Penal Code section 12402 or that it was "capable of emitting tear gas" in violation of Penal Code section 12420, or that Cook possessed it.

On the date of the offenses charged, i.e., May 6, 1969, Penal Code section 12420 provided: "Any person . . . . who . . . knowingly . . . possesses . . . any form of shell, cartridge, or bomb containing or capable of emitting tear gas, or any weapon designed for the use of such shell, cartridge, or bomb, . . . is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison. . . ."

Count I of the indictment alleges petitioners "did unlawfully have in their possession a weapon designed for the use of a shell containing and capable of emitting tear gas."

Petitioners contend Chemical Mace is not a tear gas as defined in Penal Code section 12401. (Stats. 1967, ch. 848, p. 2272.) The evidence heretofore related supports a contrary conclusion. We hold the contention without merit. (Cf. *People* v. *Autterson*, 261 Cal.App.2d 627, 629-630 [68 Cal.Rptr. 113].) Petitioners' argument the cannister was not capable of emitting tear gas as charged in the information, is of no consequence in light of the fact the statute applies in the alternative to a shell, cannister or bomb "containing *or* capable of emitting tear gas." (Italics ours.) The cannister contained tear gas.

Petitioners also contend Exhibit 4 (the Mace cannister) is not a weapon designed for the use of a shell containing and capable of emitting tear gas, which is the charge against them. One officer described Exhibit 4 as "a mace aerosol gas cannister" in a leather holster. Another officer described it as a police issue Mace can. The phrase "weapon designed for the use of such shell, cartridge or bomb" as used in former Penal Code section 12420, was defined in former Penal Code section 12402 as applying to and including "all revolvers, pistols, fountain pen guns, billies, riot guns or other form of device, . . . intended for the projection or release of tear gas . . . ." The meaning of the language "other form of device . . . intended for the projection or release of tear gas," is restricted under the doctrine of *ejusdem generis* to a form of device similar to those specifically mentioned, i.e., a revolver, pistol, fountain pen gun, billy, or riot gun, and does not include a tear gas shell, cartridge or bomb as such. (Civ. Code, § 3534; *People* v. *Wolff*, 61 Cal.2d 795, 821 [40 Cal.Rptr. 271, 394 P.2d 959]; *In re Marquez*, 3 Cal.2d 625, 628 [45 P.2d 342]; *People* v. *Collins*, 273 Cal.App.2d 1 [77 Cal.Rptr. 741].) Former Penal Code, section

12420 defined two offenses, viz., (1) possession of a tear gas shell, cartridge or bomb, and (2) possession of a weapon designed for the use of such a shell, cartridge or bomb. Petitioners were charged with the latter. Although an aerosol cannister containing tear gas is a "shell, cartridge or bomb" as defined in former Penal Code section 12400 (see *People* v. *Autterson, supra,* 261 Cal.App.2d 627, 629), and it was shown petitioners were in possession of such a cannister, there is no showing they were in possession of a tear gas weapon as charged in the indictment.

■ As to the question of the aerosol cannister being in the joint possession of both petitioners, it was shown they jointly occupied the room in which the cannister was found; were observed therein; and were seen looking into the suitcase containing the cannister after Cook placed it on a table where it was opened and closed, and then placed back on the luggage rack. After the officers entered the room Urbana picked up the same suitcase and started packing. Thus, it was shown both petitioners exercised dominion and control over the suitcase in which the cannister was found. The evidence supports a finding of probable cause to believe the cannister was in the joint possession of both petitioners.

■ With respect to count 2, it is argued there is no legal evidence the "shims," resembling in size and texture a medium sized pen point, were possessed with intent to feloniously break and enter into a building. There is merit to this argument. The "shims" taken from petitioners may be used to disassemble locks after some maneuvering with an instrument called a "follower." There is no evidence petitioners were in possession of a "follower." An essential element of the offense charged in count 2 is possession "with intent feloniously to break or enter into any building." (Pen. Code, § 466.) The hearsay evidence produced at the hearing, although admissible to show probable cause to arrest petitioners (*People* v. *Brite,* 9 Cal.2d 666 [72 P.2d 122]; *People* v. *Kilvington,* 104 Cal. 86 [37 P. 799]), was not admissible to show they feloniously intended. to break or enter into any building. No person testified any burglary by means of a "shim," or otherwise, actually had been perpetrated, except by hearsay. There was no testimony any of the rooms at the country club were burglarized, or that money or jewelry was stolen from those rooms, except by hearsay. There was no testimony petitioners registered in the hotel under assumed names, except by hearsay. There was no evidence petitioners committed the burglaries reported to the police. The testimony they were jewel thieves was hearsay. No loot was discovered in their possession. The only evidence showing probable cause to believe petitioners intended to use the "shims" to feloniously break or enter into a building is hearsay. ■ An indictment based entirely on hearsay evidence is unauthorized and must be set aside on motion under Penal Code section 995. (*Priestly* v. *Superior*

*Court,* 50 Cal.2d 812, 815-816 [330 P.2d 39]; *Rogers* v. *Superior Court,* 46 Cal.2d 3, 8 [291 P.2d 929]; *People* v. *Bartlett,* 199 Cal.App.2d 173, 179 [18 Cal.Rptr. 480].)

■ It further appears the indictment may be lacking in evidentiary support to show a common objective in possessing the Mace cannister and possessing the "shims." Absent such a showing the felony and misdemeanor counts are misjoined (Pen. Code, § 954), and the superior court is without jurisdiction to try count 2. (*Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206].) Joinder would be proper if it were shown petitioners intended to use the Mace cannister and "shims" to commit burglaries. Absent the hearsay testimony, there is no such evidence.

The contention petitioners' constitutional rights were violated by first filing a complaint in the municipal court and later dismissing it upon the return of an indictment on the same charges is fully answered in *People* v. *Flores,* 276 Cal.App.2d 61, 65 [81 Cal.Rptr. 197]. The factual premise of petitioners' claim the complaint-preliminary hearing process was used wrongfully to detain them pending indictment proceedings before the grand jury is not supported by the record. We make no determination respecting the merits of the legal premise advanced in support of this claim.

■ Lastly, it is contended the search and seizure of the cannister and "shims" was unlawful. The contention is without merit. The evidence establishes probable cause to arrest petitioners for the offense of burglary. In addition, Officer Cornette had reasonable cause to arrest petitioners for possession of the Mace cannister when it was exposed to view by Urbana while packing the suitcase. The search and seizure to which petitioners object was lawful as an incident to these arrests. (*People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Torres,* 56 Cal.2d 864, 866 [17 Cal.Rptr. 495, 366 P.2d 823]; *People* v. *Boyles,* 45 Cal.2d 652, 656 [290 P.2d 535]; *People* v. *Holmes,* 237 Cal.App.2d 795, 799 [47 Cal.Rptr. 246]; *People* v. *Nebbitt,* 183 Cal.App.2d 452 [7 Cal.Rptr. 8].)

A peremptory writ is granted directing the superior court to vacate its order denying petitioner's motion under Penal Code section 995; to set aside the indictment; and to direct the matter be resubmitted to another

grand jury pursuant to Penal Code sections 997 and 998 for reconsideration in harmony with the views expressed in this opinion.

Brown (Gerald), P. J., and Coughlin, J., concurred.