[Crim. No. 6113. Third Dist. Oct. 8, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMAN FREEMAN, Defendant and Appellant.

## COUNSEL

Jerome S. Stanley, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Nelson P. Kempsky and Carol Hunter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRIEDMAN, Acting P. J.** — Defendant appeals after a jury found him guilty of first degree robbery. According to the prosecution evidence he served as the getaway man in an armed robbery of a store perpetrated by two accomplices, Foster and Ellis. The robbery occurred about 11:30 a.m. on a Saturday. Several witnesses inside the store identified Foster and Ellis as the holdup men. The robbers took about $190 in cash and checks. Gonzales, a witness who was outside the store, saw three men arrive in an automobile. Two went into the store and one remained in the car. A few minutes later Gonzales saw the two men walking rapidly from the store and get into the car, which drove away. Feeling suspicious,

Gonzales mentally noted the characteristics and license number of the car. It was a 1956 or 1957 green and white Chevrolet with black primer spots on a door. Gonzales entered the store and furnished the car's description to the proprietor, who was just phoning the police. Forty minutes later police sighted the car and stopped it. Defendant was driving the car and Foster was a passenger. The car belonged to defendant. Foster had in his possession $45 in one-dollar bills and four or five five-dollar bills. Defendant had $55 in various denominations.

At the lineup Gonzales tentatively identified Foster as one of the two men who had entered the store but he was unable to identify defendant as the driver.

Defendant was tried alone. He testified in substance that he had spent Friday night at the home of his fiancee, Brenda Banks. He left there shortly before noon on Saturday in the Chevrolet automobile to see a doctor about his back before the doctor closed his office at noon. En route he saw Foster on the street and offered him a ride. He was arrested while he and Foster were driving along the street. He explained that on Friday, the preceding day, Ellis had approached him about buying the Chevrolet. They arranged that Ellis would use the Chevrolet overnight; that he would be over the next day with the money if he liked the car; if not, he would leave it parked in front of Brenda Banks' home. He also explained that Ellis had not needed a key to the car because the car would start without a key after the switch was turned on.

■ There is no merit to defendant's claim of insufficient evidence. Defendant's automobile was used as the getaway car in an armed robbery. Forty minutes later defendant was found driving the identical automobile with one of the robbers. Defendant's alibi was a transparent falsehood, calling upon the jurors to believe that Ellis had borrowed defendant's car, used it in the robbery and returned it to defendant; that just prior to defendant's arrest, he was driving along the street and fortuitously met and picked up Foster, who, by a fantastic coincidence, happened to be the robbery partner of Ellis, the very man who had used the car the previous night. With or without defendant's absurd courtroom testimony, there was substantial evidence of guilt.

■ Defendant claims error because Foster (who was in custody) was brought into the courtroom under guard for the purpose of identification by two witnesses. He argues that he was prejudiced in the eyes of the jury by association with a person in custody. The claim is flimsy and rests upon a highly subjective notion of the factors motivating jurors. A comparable procedure was sustained by the Supreme Court in *People v. Terry,* 57 Cal.2d 538, 562 [21 Cal.Rptr. 185, 370 P.2d 985].

■ Claims of error arise from the testimony of Mrs. Anna Duckworth and Fred Knipp, a district attorney's investigator. Both were prosecution rebuttal witnesses, and both testified over defense objections. With reference to the Saturday morning in question, Mrs. Duckworth testified that about 7 a.m. she had gone to the nearby house of her daughter, Annette, girl friend of Foster. She testified that Foster was frequently at Annette's house but she did not know whether he was there on this particular morning. While Mrs. Duckworth was outside the house, a man came to the house. She heard her daughter greet the man with the words, "Hi, Norman." Several days later Knipp, the investigator, interviewed her. She admitted telling Knipp that her daughter had greeted a man by the name of Norman; denied telling Knipp that Foster had been in bed at Annette's house on the morning in question; denied telling Knipp that Norman twice came to the house that morning and, on the second occasion, had left the house in company with Foster; denied identifying the man as Norman Freeman.

Over objection the prosecutor called Knipp, who testified that he had interviewed Mrs. Duckworth, who told him that on the Saturday morning in question a man had twice come to the daughter's house, where Lee Foster was in bed; that on the second occasion Foster and the man had left the house together; that the man was Norman Freeman.

Without analysis and without citation of authority, defendant charges that Mrs. Duckworth's "Hi, Norman" testimony was hearsay. It was not hearsay, because not offered to prove the statement's truth or falsity but as evidence of the fact that the statement was made. ■ Where the fact that a statement was made is relevant regardless of its truth or falsity, the statement is admissible. (*People* v. *Contreras,* 201 Cal.App.2d 854, 857 [20 Cal.Rptr. 551]; *People* v. *Henry,* 86 Cal.App.2d 785, 789 [195 P.2d 478]; Witkin, Cal. Evidence (2d ed. 1966) § § 463, 465.) Thus Wigmore states: "Utterances serving to *identify* are admissible as any other circumstance of identification would be." (6 Wigmore on Evidence (3d ed.) p. 240.) ■ Norman Freeman's presence at the home of Annette Duckworth (at a time when he said he was asleep at the home of his fiancee, Brenda Banks) was itself a relevant fact. The fact that the statement "Hi, Norman" was made tended to prove circumstantially that one Norman had come to the house of a person associated with Foster, the alleged associate of Norman Freeman in the armed robbery.

Defendant argues that the prosecution could not place Mrs. Duckworth on the stand, elicit her version of statements to Knipp as a device for getting in Knipp's inconsistent version of these statements, ostensibly as

impeachment but really to prove the truth of the latter version. The argument is supported by *People* v. *Taylor,* 4 Cal.App.2d 220, 223 [40 P.2d 895], a case antedating Evidence Code section 1235. Defendant does not cite or discuss section 1235.

Knipp's version of Mrs. Duckworth's statements was not admitted for the restricted purpose of impeaching Mrs. Duckworth, but as evidence of the statements' truth, that is, that Norman Freeman had twice been at the home of Annette Duckworth on the morning of the crime and had left in company with Foster (who had been identified by other evidence as defendant's crime partner). Had Mrs. Duckworth not previously denied her statements to Knipp, the latter's testimony would have been inadmissible hearsay. Manifestly the prosecutor did not elicit Mrs. Duckworth's version for its probative value but as a tool to unlock the evidentiary door to Knipp's conflicting version of Mrs. Duckworth's statements to him.

Evidence Code section 1235 declares: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." Section 1235 is designed to permit evidentiary use of a witness' inconsistent statement either to impeach him or as substantive evidence of the truth of the matters asserted. (*People* v. *Bynum,* 4 Cal.3d 589, 602-603 [94 Cal.Rptr. 241, 483 P.2d 1193]; *People* v. *Woodberry,* 10 Cal.App.3d 695, 705 [89 Cal.Rptr. 330].) In *California* v. *Green,* 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930], constitutionality of section 1235 was sustained against the contention that it violated the constitutional right of confrontation. The *Green* opinion declares that "the usual dangers of hearsay are largely nonexistent where the witness testifies at trial." (399 U.S. at p. 155 [26 L.Ed.2d at p. 495].)

Although *Green* was primarily concerned with inconsistent statements in the form of transcribed testimony, the majority opinion of Mr. Justice White also takes up the question of nontestimonial declarations, observing (399 U.S. at p. 168 [26 L.Ed.2d at p. 503]): "The subsequent opportunity for cross-examination at trial with respect to both present and past versions of the event, is adequate to make equally admissible, as far as the Confrontation Clause is concerned, both the casual, off-hand remark to a stranger, and the carefully recorded testimony at a prior hearing." Moreover, the *Green* opinion points out: "[T]he inability to cross-examine the witness at the time he made his prior statement cannot easily be shown to be of crucial significance as long as the defendant is assured of full and effective cross-examination at the time of trial." (399 U.S. at p. 159 [26 L.Ed.2d at p. 497].)

Thus, as we interpret the *Green* decision, the nontestimonial character of the witness' prior statement and his availability for cross-examination only at the time of trial present no constitutional bar to its use as substantive evidence.

In some cases a witness' prior statement is offered by the opponent of the litigant who originally called him. More typically, a party calls a recanting, hostile witness as a prelude to the testimony of a subsequent witness who describes the conflicting declarations of the first (e.g., *California* v. *Green, supra; People* v. *Johnson,* 68 Cal.2d 646 [68 Cal.Rptr. 599, 441 P.2d 111]; *People* v. *Woodberry, supra; People* v. *Pierce,* 269 Cal.App.2d 193 [75 Cal.Rptr. 257]; *People* v. *Hopper,* 268 Cal.App.2d 774 [75 Cal.Rptr. 253]).

The Evidence Code abolished former restrictions which required a litigant to show surprise and injury as a precondition to evidence of his own witness' inconsistent statements. (See Evid. Code, § 785; *People* v. *Woodberry, supra,* 10 Cal.App.3d at p. 703.) Legislative abolition of these restrictions was hardly designed to prevent the litigant from countering the testimony of his own recanting witness. Whichever side calls the witness, his presence and availability for cross-examination permit the jury to choose between his former version and his present testimony. Thus the *Green* opinion points out: "The witness who now relates a different story about the events in question must necessarily assume a position as to the truth value of his prior statement, thus giving the jury a chance to observe and evaluate his demeanor as he either disavows or qualifies his earlier statement." (399 U.S. at p. 160 [26 L.Ed.2d at p. 498].)

Section 1235 brings California among those jurisdictions which (once more to quote *California* v. *Green*) "permit the substantive use of prior inconsistent statements on the theory that the usual dangers of hearsay are largely nonexistent where the witness testifies at trial." (399 U.S. at p. 155 [26 L.Ed.2d at p. 495].) The witness' recantation permits the inference that he has something to hide, and this inference provides the earlier version a measure of reliability.* The jury may choose which

---

*A parallel observation was voiced by the California Code Commission in its comments accompanying section 1235: ". . . The declarant is in court and may be examined and cross-examined in regard to his statements and their subject matter. In many cases, the inconsistent statement is more likely to be true than the testimony of the witness at the trial because it was made nearer in time to the matter to which it relates and is less likely to be influenced by the controversy that gave rise to the litigation. The trier of fact has the declarant before it and can observe his demeanor and the nature of his testimony as he denies or tries to explain away the inconsistency. Hence, it is in as good a position to determine the truth or falsity of the prior statement as it is to determine the truth or falsity of the inconsistent testimony given in court."

version to believe or reject both versions altogether. ■ When a litigant intentionally brings in the declarant for the purpose of eliciting a predictably false version, he is not misusing section 1235 but utilizing it for the very purpose it is designed to fulfill—that is, to open the door to a second witness with a conceivably reliable indicator of the actual events. The technique conforms to the letter and spirit of section 1235, which supplies fact-finders with a formerly unavailable means for uncovering the truth.

■ The record here shows that both Mrs. Duckworth and Investigator Knipp first testified outside the jury's presence as part of a prosecution offer of proof. Later, over defense objections, both testified before the jury as rebuttal witnesses for the prosecution. In view of their *voir dire* testimony, both the prosecution and district attorney knew what to expect. After Mrs. Duckworth had finished testifying before the jury, she was excused with the consent of both counsel. Although she was not in court when Knipp gave his version of his interview with her, she could have been made available for further cross-examination had defense counsel so elected. Section 1235 permits the prior inconsistent statements if offered in compliance with section 770. The latter, in effect, requires either that the declarant be provided an opportunity to explain or deny the statement or that he be kept available for further testimony. The first of these conditions was satisfied. Under these circumstances the court correctly permitted Knipp to testify.

Judgment affirmed.

Janes, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 29, 1971.