[No. F017092. Fifth Dist. Nov. 30, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO GUSTAVO DeLaCRUZ, Defendant and Appellant.

COUNSEL

James T. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Michael Weinberger and Suzanne M. Ambrose, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—We hold here that a person certified to use chemical Mace in self-defense, but who does so *not* in self-defense, may be prosecuted

under the special provisions of Penal Code[1] section 12403.7, subdivision (a)(8), but not under the more general provisions of section 375, subdivision (d).

## FACTS AND PROCEDURAL BACKGROUND

On the night of April 6, 1991, appellant was working as a security guard for O'Neal Security at the Taco Bell restaurant in Porterville. He was armed with a chemical Mace dispenser. He had received training in, and was certified for the use of, various weapons, including tear gas.

One of appellant's responsibilities was to ensure that teenagers did not loiter in the restaurant or in the parking lot. Anyone inside not eating was asked to leave.

While outside, appellant noticed three young men in the restaurant sitting in a relaxed manner. According to appellant, only one of them had any food. The three men were later identified as William Davis, Danny Plumlee and Kevin Graves. Appellant tapped on the window and indicated with his hands that the three were to leave. Davis showed appellant a burrito. A few minutes later, appellant entered the restaurant and approached the area where the young men were sitting. Appellant told them to leave. The three argued that they were still eating and questioned why they needed to leave. Davis said they were upset that they had been ordered to go.

Appellant told the trio they would have to leave in 10 minutes and turned to walk away. More words were exchanged and appellant turned back to the table. He placed his flashlight on his shoulder. A physical altercation between Davis and appellant shortly followed. The evidence was in sharp conflict as to who initiated the fight, but it is clear that during the brawl appellant struck Davis with his flashlight in the head, neck/shoulder area, arm, and hip, and Davis punched appellant in the face.

Davis and appellant were separated by Davis's friends and another security guard working with appellant. Davis was bleeding from the head and the other security guard walked him off to another area of the restaurant. A few moments later appellant sprayed Davis with Mace, causing injury. Again, the evidence was in conflict as to what precipitated the spraying. Appellant's own testimony and other evidence indicated Davis was approaching appellant in a threatening manner and appellant used the Mace in self-defense. Prosecution witnesses testified Davis was not engaged in any aggressive behavior at the time the Mace was sprayed. According to them the fight was over and appellant and Davis were separated.

[1] All statutory references are to the Penal Code unless otherwise indicated.

Davis was taken to the hospital for treatment. His head injury required eight stitches. He was bruised and suffered burns and blistering from the Mace.

Appellant was charged under section 245, subdivision (a)(1) for striking Davis with his flashlight and under section 375, subdivision (d) for spraying him with Mace. Appellant pleaded not guilty and relied on claims of self-defense as to both charges. Before the case was submitted to the jury, appellant moved for a judgment of acquittal under section 1118.1 as to the section 375, subdivision (d) charge, claiming that prosecution under that section was barred because the alleged conduct was covered under a more specific statute, section 12403.7, subdivision (a)(8). The motion was denied.

The jury's verdicts imply findings that appellant acted in self-defense in striking Davis but did not do so in using Mace.

At sentencing appellant was placed on felony probation subject to certain conditions, including a 90-day local jail confinement.

DISCUSSION

*Prosecution under section 375, subdivision (d) is precluded.*

■ Appellant claims he was improperly charged under section 375, subdivision (d). He argues because he was certified to carry and use tear gas, his conduct is covered by section 12403.7.

■ Prosecution under a general statute is precluded when the facts of the alleged offense parallel the acts proscribed by a special statute. (*People v. Jenkins* (1980) 28 Cal.3d 494, 502 [170 Cal.Rptr. 1, 620 P.2d 587]; *People v. Ruster* (1976) 16 Cal.3d 690, 694 [129 Cal.Rptr. 153, 548 P.2d 353, 80 A.L.R.3d 1269]; *In re Williamson* (1954) 43 Cal.2d 651, 654 [276 P.2d 593]; *People v. Salemme* (1992) 2 Cal.App.4th 775, 783 [3 Cal.Rptr.2d 398].)

Appellant argues section 12403.7 is a special statute governing use of tear gas by certified individuals. Respondent counters that section 375 is the special statute because it addresses not the general use of tear gas, but use in a specific place.

Section 375 provides as follows:

"(a) It shall be unlawful to throw, drop, pour, deposit, release, discharge or expose, or to attempt to throw, drop, pour, deposit, release, discharge or

expose in, upon or about any theater, restaurant, place of business, place of amusement or any place of public assemblage, any liquid, gaseous or solid substance or matter of any kind which is injurious to person or property, or is nauseous, sickening, irritating or offensive to any of the senses.

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(d) Any person who, in violating any of the provisions of subdivision (a), willfully employs or uses any liquid, gaseous or solid substance which may produce serious illness or permanent injury through being vaporized or otherwise disbursed in the air or who, in violating any of the provisions of subdivision (a), willfully employs or uses any tear gas, mustard gas or any of the combinations or compounds thereof, or willfully employs or uses acid or explosives, shall be guilty of a felony and shall be punished by imprisonment in the state prison."

Section 375 was enacted in 1931 and has been amended several times since, but without substantial change. A violation of section 375, subdivision (d) is a felony.

Section 12403.7 provides in relevant part as follows:

"(a) Notwithstanding any other provision of law, any person may purchase, possess or use tear gas and tear gas weapons for the projection or release of tear gas if such tear gas and tear gas weapons are approved by the Department of Justice and are used solely for self-defense purposes, subject to the following requirements:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(6)(A) No person shall purchase, possess, or use any tear gas or any tear gas weapon who has not completed a course certified by the Department of Justice in the use of tear gas and tear gas weapons pursuant to which a card is issued identifying the person who has completed such a course. Such a course shall be taken under the auspices of any institution approved by the Department of Justice to offer tear gas training. Such a training institution is authorized to charge a fee covering the actual cost of such training. The requirements of this paragraph shall not apply to a person who is a retired

peace officer, as peace officer is defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, if the person prior to retirement had satisfactorily completed a course of instruction approved by the Commission on Peace Officer Standards and Training in the use of tear gas and tear gas weapons.

" . . . . . . . . . . . . . . . . . . . . . . . .

"(8) Any person who uses tear gas or tear gas weapons except in self-defense or as authorized for training purposes by the department is guilty of a public offense and is punishable by imprisonment in a state prison for 16 months, or two or three years or in a county jail not to exceed one year or by fine not to exceed one thousand dollars ($1,000) or by both such fine and imprisonment, except that if such use is against a peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, engaged in the performance of his or her official duties and the person committing the offense knows or reasonably should know that the victim is a peace officer, the offense is punishable by imprisonment in a state prison for 16 months or two or three years or by fine of one thousand dollars ($1,000) or by both such fine and imprisonment."

▮ Chemical Mace is tear gas within the meaning of this statute. (§ 12401; *Cook* v. *Superior Court* (1970) 4 Cal.App.3d 822, 828 [84 Cal.Rptr. 664].)

Section 12403.7 was enacted in 1976 and has also been amended several times since without substantive change to the provisions relevant to this case. In contrast with section 375, subdivision (d), a violation of section 12403.7, subdivision (a)(8) may be punished as either a felony or a misdemeanor except when tear gas is used against a peace officer performing his or her official duties. Because the two statutes provide for different degrees of punishment, we must determine whether appellant was properly prosecuted under section 375, subdivision (d).

▮ " '[W]here [a] general statute standing alone would include the same matter as [a] special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after such general enactment.' " (*In re Williamson, supra*, 43 Cal.2d at p. 654.)

▮ Section 375 is broader, and thus more general, than section 12403.7 in the sense that it applies to conduct other than the use of tear gas. At the

same time it is narrower, and thus more specific, in the sense that it applies only to conduct occurring in places of public assemblage. The evident legislative purpose of section 375 is to protect the public from willful use of toxic and nauseous substances which are injurious by prohibiting use in places where numbers of people gather. This purpose is shown not only by the statute's language but by its inclusion in part 1, title 10 of the Penal Code, which deals with crimes against public health and safety.

Section 12403.7, on the other hand, is found in part 4, title 2 entitled "Control of Deadly Weapons." Chapter 4 of that title deals exclusively with tear gas and tear gas weapons and clearly represents a legislative attempt to control their use and possession. The statute is permissive ("any person may purchase, possess or use tear gas and tear gas weapons") subject to various conditions and requirements. Some designated persons (certain felons, narcotic addicts and minors) are denied permission. (§ 12403.7, subd. (a)(1)-(4).) The type and size of the tear gas weapon are subject to regulation. (§ 12403.7, subd. (a)(5).) Persons are not permitted to purchase, use, or possess tear gas or tear gas weapons without first completing a certified course as to their use and obtaining an identification card evidencing completion of the course. (§ 12403.7, subd. (a)(6).) Such person is then permitted to use tear gas and tear gas weapons *if* such use is in self-defense. (§ 12403.7, subd. (a)(8).)

Significantly, section 12403.7 does not restrict the place in which an authorized person may use tear gas. The absence of such restriction leads us to conclude that a person who meets all the conditions and requirements of section 12403.7 may use tear gas even when in a theater, restaurant, place of business, place of amusement or any other place of public assemblage, even though that use would otherwise be prohibited under section 375.

We view section 12403.7 as an exception to the more general provisions of section 375. That conclusion does not dispose of the issue, however, because prosecution under a general statute is not always precluded when the conduct also falls under a special statute. Respondent claims prosecution under section 375 is not precluded because section 12403.7 does not contain all the elements of section 375—it does not require that the use of tear gas be in a place of public assemblage, citing *People* v. *Ruster, supra*, 16 Cal.3d 690, 694, and *People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580]. These cases, along with others, state that ". . . a special statute does not supplant a general statute unless *all* of the elements of the general statute are included in the special statute." (*Ibid.*)

However, in *People* v. *Jenkins, supra,* 28 Cal.3d 494, our state Supreme Court disapproved the "all" language found in *Ruster* and *Gilbert* (28 Cal.3d at pp. 503-504, fn. 9). The Supreme Court stated: "[T]he *Williamson* rule is applicable when each element of the 'general' statute corresponds to an element on the face of the 'specific' statute. However, the converse does not necessarily follow. It is not correct to assume that the rule is inapplicable whenever the general statute contains an element not found within the four corners of the 'special' law. Rather, the courts must consider the *context* in which the statutes are placed. If it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute, the *Williamson* rule may apply even though the elements of the general statute are not mirrored on the face of the special statute." (*People* v. *Jenkins, supra,* 28 Cal.3d at p. 502.)

The Legislature's enactment of section 12403.7, authorizing use of tear gas by appropriately trained and certified persons without regard to the place of use, impliedly reflects awareness that such use will frequently be necessary in places of public assemblage. As the facts of this case show, it is not uncommon for private security guards, armed with chemical Mace dispensers, to patrol places where people congregate, such as shopping malls, theaters, sites of sports events, banks, restaurants and other places of business. We assume the Legislature considered issues of public safety when it authorized use of tear gas in such places. The requirements as to the type of gas, type and size of container, and training, are undoubtedly directed, at least in part, to the public safety concerns. Thus, it appears to us that the Legislature struck a balance between the need for legitimate use of tear gas and the public safety concerns underlying section 375.

When the user is not within one of the excluded groups and has complied with the requirements of paragraphs (5) and (6) of section 12403.7, subdivision (a), the only remaining limitation is that he or she use the tear gas in self-defense. Under respondent's interpretation of the statutes, a trained, certified person using tear gas *not* in self-defense is liable to prosecution under section 375, subdivision (d) if the use was in a place of public assemblage; otherwise the prosecution can only be under 12403.7, subdivision (a)(8). The context of the statutes leads us to reject that interpretation.

Whether a person is acting in self-defense turns on subtle factual questions. Was the person acting reasonably in believing he or she was about to receive a bodily injury? If so, did he or she act reasonably in using tear gas to prevent injury? (See CALJIC No. 5.30.) Had the apparent danger ceased

before the tear gas was used? (See CALJIC No. 5.53.) We fail to see how the answers to these questions necessarily affect public safety. If a properly trained and certified security officer uses tear gas in an area of public assemblage, the threat to public safety seems to be the same whether he acted in self-defense or otherwise.

Further indication that section 375, subdivision (d) does not govern persons certified under section 12403.7 to possess and use tear gas is the recognition in the language of section 12403.7 that other provisions of law may appear applicable but it is the intent of the Legislature that they not be. ■ Section 12403.7 begins with the words "Notwithstanding other provisions of law." This term of art has been read as an express legislative intent to have the specific statute control despite the existence of other law which might otherwise govern. (See *In re Marriage of Dover* (1971) 15 Cal.App.3d 675, 678, fn. 3 [93 Cal.Rptr. 384]; *State of California* v. *Superior Court* (1967) 252 Cal.App.2d 637, 639 [60 Cal.Rptr. 653].)

■ When enacting section 12403.7, the Legislature provided a comprehensive scheme of regulation and certification for the possession and use of tear gas and tear gas weapons. It anticipated the situation presented here, i.e., where a certified individual uses tear gas, but not in self-defense. It prescribed a penalty flexible enough to cover the various degrees of culpability which might be present—a deliberate and malicious misuse of tear gas or an error in judgment as to what constitutes self-defense under the law.

Because of the comprehensive nature of the statute, its express recognition that there may be other conflicting provisions within the law, and its provision for punishment consistent with the scope and intent of the law, we hold that section 12403.7 was intended to preclude prosecution under the more general statutory provisions of section 375, subdivision (d) when a person is certified to possess and use tear gas, as was appellant.[2]

In view of our holding on this issue, we need not consider or decide appellant's remaining contentions that the court committed instructional error, including appellant's contention that CALJIC No. 2.90 was improperly given (*Sandoval* v. *California*, cert. granted Sept. 28, 1993, __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40]) and that the court failed to give a complete answer to the jury's question during deliberations.

---

[2] We express no opinion on whether an uncertified person using tear gas in a place of public assemblage is subject to prosecution under section 375, subdivision (d). That question is not before us.

## Disposition

Judgment reversed.

Stone (W. A.), Acting P. J., and Buckley, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 17, 1994. Kennard, J., and George, J., were of the opinion that the petition should be granted.