Filed 8/5/13  P. v. Segobia CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055050 |
| v. | (Super.Ct.No. RIF10001768) |
| ALBERT VALENTINE SEGOBIA, III, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge. Affirmed in part; reversed in part.

Johanna R. Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Peter Quon, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury found defendant and appellant Albert Valentine Segobia III guilty of unlawful possession of a syringe in a penal institution (Pen. Code, § 4573.6, count 1),[1] and unlawful possession of a drug, to wit, heroin, in a penal institution (§ 4573.8, count 2). Defendant thereafter admitted that he had suffered four prior prison terms (§ 667.5, subd. (b)) and one prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subd. (a)). As a result, defendant was sentenced to a total term of 10 years in state prison with credit for time served.

On appeal, defendant contends: (1) his conviction on count 2 must be reversed because the Legislature intended a prisoner's contemporaneous possession of multiple items of drug contraband to constitute a single crime; (2) there was insufficient evidence to his conviction on count 2 because the People failed to introduce any substantial evidence showing he possessed a "usable quantity" of heroin; and (3) this court should independently review confidential materials that were examined by the trial court in camera as part of his discovery motions and to determine if the trial court's denial of his motion was proper.

I

FACTUAL BACKGROUND

On September 10, 2009, defendant was incarcerated at the California Rehabilitation Center (CRC) in Norco when, at 3:40 p.m., Department of Corrections Officer Brian Ellis and his partner Officer Read conducted a search of the men's

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

dormitory defendant was housed in. The dormitory housed approximately 100 inmates; however, at the time of the search, about half the inmates housed in the dormitory were present. As Officer Ellis entered the dormitory, he saw defendant, who was sitting alone on his lower bunk bed, suspiciously move his right hand toward his nearby unlocked locker. No other inmates were near defendant.

Officer Ellis did not see anything in defendant's hand, and could not initially see into the locker. However, because defendant's hand movements appeared suspicious, Officer Ellis contacted defendant and conducted a clothed body search of defendant and his bed. Officer Ellis did not locate any contraband on defendant or in his bed. Officer Ellis then searched defendant's locker and found an inmate-manufactured syringe made from the barrel of a black ballpoint pen. Officer Ellis also found a small piece of cotton and a prison issued spoon. The syringe contained a brown liquid. Officer Ellis conducted a presumptive field narcotics test of the brown liquid, which resulted in a positive reaction for heroin. Officer Ellis opined that the amount in the heroin in the syringe was a "usable amount."

The content of the syringe was later sent to the Department of Justice for testing. Following an analysis of the brown liquid, a criminalist determined the substance contained "heroin residue" and methamphetamine. The term heroin "residue" is used when a liquid sample is within a volume less than 0.1 milliliter. Neither the cotton ball nor the spoon were tested for drug residue, nor were any fingerprints discovered on the syringe, pen, or spoon.

A prison nurse noted that defendant's blood pressure and temperature were abnormal; that defendant struggled with basic coordination; and that he had needle marks on his body. The nurse believed defendant was under the influence of drugs and recommended a urine test. Defendant refused to submit to a voluntary urine test, telling Officer Ellis, "I used last night. I'm dirty."

Defendant claimed that the syringe did not belong to him but that it was planted by the Mexican Mafia, a gang that controls narcotics trafficking in prison, to get him in trouble. He believed that the Mexican Mafia planted the syringe with the drugs because he made a bad call when he was a "shot caller" and the discovery of the drugs would get him transferred to CRC Chino, where the gang could more easily order him harmed. When he returned from the yard, he saw Fernando Chang, a known gang member, near his prison locker; however, he did not see Chang carrying a pen or see Chang put anything into his locker. After his arrest in this case, he was transferred to CRC Chino and housed in protective custody.

Defendant admitted that he had used another inmate's syringe the previous night to inject heroin, but that he was not under the influence at the time of the locker search. He explained that drugs are common in prison, with about one-third of the inmates using heroin, and that inmates routinely set each other up by planting drugs.

4

II

DISCUSSION

A.    *Conviction on Count 2*

Defendant contends, and the People correctly concede, that his simultaneous possession of a syringe while in prison (§ 4573.6) and possession of heroin while in prison (§ 4573.8) constituted a single crime.  We agree.

Section 4573.6 in pertinent part provides:  "Any person who knowingly has in his or her possession in any state prison . . . any controlled substances, the possession of which is prohibited by Division 10 (commencing with Section 11000) of the Health and Safety Code, any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming controlled substances, without being authorized to so possess the same . . . is guilty of a felony punishable by imprisonment . . . for two, three, or four years."

Section 4573.8 states in relevant part:  "Any person who knowingly has in his or her possession in any state prison . . . drugs in any manner, shape, form, dispenser, or container, any device, contrivance, instrument, or paraphernalia intended to be used for unlawfully injecting or consuming drugs, or alcoholic beverages, without being authorized to possess the same by rules of the Department of Corrections . . . or by the specific authorization of the warden . . . or other person in charge of the prison . . . is guilty of a felony."

Section 4573.8 has parallel meaning with section 4573.6, although broader in scope.  Section 4573.8 is general and section 4573.6 is specific and, thus, the former

5

includes the discrete acts covered by the latter. (*People v. DeLaCruz* (1993) 20 Cal.App.4th 955, 958.)

In *People v. Rouser* (1997) 59 Cal.App.4th 1065, the appellate court was confronted with the issue of whether contemporaneous possession of more than one controlled substance constituted more than a single crime under Penal Code section 4573.6, the statute at issue in this case. In analyzing the issue, the *Rouser* court compared section 4573.6 with the provisions in the Health and Safety Code prohibiting the possession of controlled substances. Noting that the Health and Safety Code provision permitted multiple convictions for possession of multiple substances, the court explained that the wording of section 4573.6, which prohibited possession of any controlled substances (plural), indicated that only one offense was committed when a person simultaneously possessed more than one controlled substance. The Health and Safety Code, by contrast, prohibited the possession of any controlled substance (singular) indicating that possession of more than one substance constituted more than one crime. (*Rouser*, at pp. 1068-1072.) The court also explained that section 4573.6 was broader than the Health and Safety Code sections in that section 4573.6 prohibited the possession of any controlled substance as well as any device, etc., used in injecting or consuming controlled substances. Conversely, the Health and Safety Code provided different sections for possession of controlled substances and associated paraphernalia. (*Rouser*, at pp. 1071-1072.) In addition, section 4573.6 is aimed at the problems of prison administration, whereas the Health and Safety Code is designed to protect all persons by regulating the traffic in controlled substances. (*Rouser*, at p. 1071.) Based on these

factors, the court held that contemporaneous possession in state prison of two or more discrete controlled substances at the same location constituted one offense under section 4573.6.  (*Rouser*, at p. 1073.)

These same reasons suggest that a person can only be charged with a single crime under section 4573.6 when he/she possesses both a controlled substance and a device used to inject or consume a controlled substance.  Otherwise, as the *Rouser* court explained, "a prison inmate could be convicted under section 4573.6 of nine counts of unlawful possession for simultaneously having in his cell a smoking pipe, a hypodermic kit, marijuana cigarettes, methamphetamine, heroin, cocaine, a mirror, a razor blade, and LSD tablets.  Based on the language of section 4573.6, it is unreasonable to conclude the Legislature intended such a result."  (*People v. Rouser*, *supra*, 59 Cal.App.4th at p. 1072.)

In this case, defendant was charged under two separate statutes, sections 4573.6 and 4573.8, for simultaneous possession of contraband.  Although section 4573.8 is more general, the two statutes are almost identical.  "Prosecution under a general statute is precluded when the facts of the alleged offense parallel the acts proscribed by a special statute."  (*People v. DeLaCruz*, *supra*, 20 Cal.App.4th 955, 958.)  Thus, we agree with the parties.  It would be anomalous to preclude multiple convictions for simultaneous possession of different items of contraband under section 4375.6, but then allow such prosecutions simply because an inmate happens to be charged with simultaneous

possession of contraband under both 4375.6 and 4375.8.  Accordingly, defendant's

conviction on count 2, possession of heroin while in CRC (§ 4573.8) must be reversed.[2]

B.      *Pitchess Discovery*

Defendant requests that we conduct an independent review of the October 18,

2010, and March 16, 2011, in camera proceedings to determine whether the trial court

followed the appropriate procedure and properly exercised its discretion in concluding

that the records did not contain any discoverable information.

A defendant is entitled to discovery of a police officer's confidential personnel

records if those files contain information that is potentially relevant to the defense.

(*Pitchess v. Superior Court* (1974) 11 Cal.3d 531, 537-538 (*Pitchess*); Evid. Code,

§§ 1043-1045.)  The discovery procedure has two steps.  First, a defendant must file a

motion seeking such records, containing affidavits "showing good cause for the discovery

or disclosure sought, setting forth the materiality thereof to the subject matter involved in

the pending litigation."  (Evid. Code, § 1043, subd. (b)(3).)  If good cause is shown, the

trial court then examines the records in camera and disclose only those records and

information that are relevant and not subject to exclusion from disclosure.  (Evid. Code,

§ 1045, subds. (a) & (b); see also *People v. Thompson* (2006) 141 Cal.App.4th 1312,

---

[2] Because we agree with the parties that count 2 should be reversed, it is
unnecessary for us to address defendant's argument that count 2 should be reversed
because there was insufficient evidence showing he possessed a "usable quantity" of
heroin.

8

1316.)  The threshold for having the trial court conduct an in camera review is relatively low.  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83-84.)

The trial court is granted wide discretion when ruling on a motion to discover police officer records (*People v. Memro* (1995) 11 Cal.4th 786, 832), and we review that ruling for abuse of discretion.  (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039).

On August 19, 2010, defense counsel filed a *Pitchess* motion requesting the production of personnel records of Officer Ellis, including all records, documents, and information relating to complaints or allegations alleging dishonesty, lying, fabrication of charges or evidence, perjury, preparation of a false or misleading police report, or other acts of moral turpitude reflecting the officer's honesty filed against Officer Ellis.  At a hearing on October 18, 2010, the trial court granted the motion and conducted an in camera review of the materials.[3]  After examining the custodian of records and reviewing the applicable records, the court found no discoverable material and ordered the records sealed.

On January 19, 2011, defense counsel filed a *Pitchess* motion requesting the production of personnel records of Officer Read, including all records, documents, and information relating to complaints or allegations alleging false arrest, illegal search and seizure, dishonesty, lying, fabrication of charges or evidence, improper tactics, or neglect of duty filed against Officer Read.  At a hearing on March 16, 2011, the trial court

---

[3]  This hearing was before the Honorable Larrie R. Brainard.

9

granted the motion and conducted an in camera review of the materials.[4]  After examining the custodian of records and reviewing the applicable records, the court ordered information relating to inmate Keandre Session disclosed and ordered the records sealed.

Because defendant was not present at the records review hearing, he requests this court to conduct an independent review of the sealed transcript of the hearing and the records produced to determine whether any error occurred.  The People do not oppose this request, but reserve a right to address this court should we discover "an irregularity in those in camera hearings" showing the trial court abused its discretion.

As requested, we have reviewed the sealed transcripts and conclude the trial courts properly conducted a *Pitchess* document review hearing.  The records produced during the in camera hearing, however, were not initially included as part of the record on appeal.  Although the sealed transcripts refer to the documents reviewed, the reviewed documents are not sufficiently identified and described for this court to determine whether the produced documents were discoverable.

Because the record does not include copies of the documents produced or sufficiently describe each document, under *People v. Mooc* (2001) 26 Cal.4th 1216 (*Mooc*), we ordered augmentation of the record for the purpose of creating a record from which this court could determine whether the documents reviewed by the trial court are discoverable.  (*Id*. at p. 1231.)

---

[4]  This hearing was conducted by the Honorable Kenneth Andreen.

10

In *Mooc*, *supra*, 26 Cal.4th 1216, as here, the trial court examined the records provided by the custodian of the requested records and declined to order disclosure. The appellate court found the record on appeal did not contain the records the trial court had examined, so it directed the police department to submit such records directly to the appellate court. Believing the police department and city attorney had improperly censored the files given to the trial court, the court of appeal ordered the custodian of the records to deliver directly to the appellate court the entire personnel file of the officer in question. After examining the entire file, the appellate court concluded that discoverable records had not been given the trial court, thus preventing the trial court from exercising its discretion under *Pitchess*. Accordingly, it reversed the defendant's conviction and remanded with directions that the trial court conduct a new *Pitchess* hearing and, if the hearing revealed discoverable information, the trial court was to disclose such before retrying the case. (*Mooc*, at pp. 1222-1225.)

The Supreme Court in *Mooc*, *supra*, 26 Cal.4th 1216, concluded that the appellate court erred in directing the custodian to turn over the officer's complete personnel file directly to the appellate court. (*Id*. at pp. 1230-1231.) The appropriate remedy was to remand the case to the trial court with directions to augment the record to reflect the documents it reviewed. (*Id*. at p. 1231.) The *Mooc* court stated that the uncertainty in the record "justified remanding the case to the trial court with directions to hold a hearing to augment the record with the evidence the trial court had considered in chambers when it ruled on the *Pitchess* motion." (*Mooc*, at p. 1231.) However, in *Mooc*, the Supreme Court ultimately concluded that the additional delay inherent in causing the matter to be

11

remanded to the trial court to settle the record as to what it had reviewed seemed "imprudent, if unnecessary." Accordingly, the Supreme Court simply reviewed the personnel file itself and concluded it contained nothing disclosable. (*Id*. at p. 1232.)

In *Mooc*, our Supreme Court described the proper procedures to be followed by the trial court when, as in this case, the trial court concludes that good cause exists for the trial court to review an officer's personnel file in response to a *Pitchess* motion: "When a trial court concludes a defendant's *Pitchess* motion shows good cause for discovery of relevant evidence contained in a law enforcement officer's personnel files, the custodian of the records is obligated to bring to the trial court all 'potentially relevant' documents to permit the trial court to examine them for itself. [Citation.] A law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a *Pitchess* motion, including those describing marital status and identifying family members, employment applications, letters of recommendation, promotion records, and health records. (See Pen. Code, § 832.8.) Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review. But if the custodian has any doubt whether a particular document is relevant, he or she should present it to the trial court. Such practice is consistent with the premise of Evidence Code sections 1043 and 1045 that the locus of decisionmaking is to be the trial court, not the prosecution or the custodian of records. The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's

12

*Pitchess* motion. A court reporter should be present to document the custodian's statements, as well as any questions the trial court may wish to ask the custodian regarding the completeness of the record. [Citation.]" (*Mooc*, *supra*, 26 Cal.4th at pp. 1228-1229.)

The *Mooc* court further stated that during the *Pitchess* motion hearing, "The trial court should then make a record of what documents it examined before ruling on the *Pitchess* motion. Such a record will permit future appellate review. If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined. Without some record of the documents examined by the trial court, a party's ability to obtain appellate review of the trial court's decision, whether to disclose or not to disclose, would be nonexistent. Of course, to protect the officer's privacy, the examination of documents and questioning of the custodian should be done in camera in accordance with the requirements of Evidence Code section 915, and the transcript of the in camera hearing and all copies of the documents should be sealed. (See *People v. Samayoa* (1997) 15 Cal.4th 795, 825 [after ruling on the *Pitchess* motion, '[t]he magistrate ordered that all remaining materials be copied and sealed'].)" (*Mooc*, *supra*, 26 Cal.4th at pp. 1229-1230, fn. omitted.)

Here, defendant has demonstrated the materiality of the information requested in his *Pitchess* motion. Both parties in this case agree that review by this court of the records reviewed by the trial court in camera is appropriate. Due to this court's inability

13

to determine what records were produced or whether the trial court appropriately denied disclosure of the records, this court ordered augmentation of the record to enable this court to review those records produced in the trial court in camera and determine whether the trial court abused its discretion in not ordering production of any of the records or information, other than the name, address, and telephone number of inmate Session.

Based on our review of the sealed reporter's transcript of the October 18, 2010 in camera *Pitchess* motion proceeding and the sealed augmented record of the documents reviewed during the trial court hearing, we conclude the trial court properly exercised its discretion in excluding from disclosure the officers' personnel records. (*People v. Samayoa*, *supra*, 15 Cal.4th at p. 827.)

In regards to the March 16, 2011 in camera *Pitchess* hearing, this court had directed the Riverside County Superior Court Clerk to transmit the documents reviewed by Judge Andreen at that hearing pursuant to *Pitchess*, *supra*, 11 Cal.3d 531. The Superior Court Clerk filed an affidavit on May 9, 2013, stating that Judge Andreen is no longer participating in the Assigned Judges' Program and is therefore unavailable to settle the record regarding the documents he had reviewed at the March 16, 2011 in camera hearing. This court has reviewed the sealed reporter's transcript for the in camera hearing held on March 16, 2011, in which the court stated which documents it had examined, and conclude the sealed reporter's transcript is sufficient for a meaningful appellate review. (*People v. Myles* (2012) 53 Cal.4th 1181, 1209.) After reviewing the files, Judge Andreen did order certain information disclosed to defendant's counsel and explained in detail his reasoning. Based on our review of the sealed reporter's transcript

14

of the March 16, 2011 in camera *Pitchess* motion proceeding, we conclude Judge Andreen did not abuse his discretion. (*Myles*, *supra*, 53 Cal.4th at p. 1209.)

III

DISPOSITION

Defendant's conviction on count 2 for possession of heroin while in a penal institution under section 4573.8 is reversed. The clerk of the superior court is directed to prepare an amended abstract of judgment reflecting this reversal and noting that defendant was convicted by jury,[5] and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation. (§§ 1213, 1216.) In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

KING
J.

CODRINGTON
J.

---

[5] We note that the abstract of judgment states that defendant was convicted by court trial. However, defendant was convicted by a jury.