Filed 11/25/13  P. v. Tong CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LY TONG,<br><br>    Defendant and Appellant. | H038490<br>(Santa Clara County<br>Super. Ct. No. C1082954) |

A jury found defendant Ly Tong guilty of felony use of tear gas and misdemeanor assault and resisting arrest for attacking a Vietnamese singer on stage during a performance at the Santa Clara Convention Center by spraying him with pepper spray and then resisting arrest.  On appeal, defendant claims the trial court erred when it:  (1) denied his *Batson/Wheeler*[1] motion; (2) denied his motion for judgment of acquittal under Penal Code section 1118.1[2] based on former section 12403.7[3] precluding prosecution for violating section 375; and (3) failed to adequately instruct the jury on the meaning of "temporary physical discomfort" in defining tear gas.  For the reasons stated here, we will affirm the trial court's judgment.

---

[1] *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*), disapproved on another ground by *Johnson v. California* (2005) 545 U.S. 162.

[2] Unspecified statutory references are to the Penal Code.

[3] Former section 12403.7 was later repealed and recodified at section 22810.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts here are taken from the testimony of trial witnesses, including defendant.

### A. PEPPER SPRAY INCIDENT

On July 18, 2010, defendant attended a concert at the Santa Clara County Convention Center, where a Vietnamese singer named Dam Vinh Hung was scheduled to perform. Fearing he would be recognized and not admitted into the concert because of previous protest efforts, defendant disguised himself as a woman by wearing a dress, coat, vest, necklace, wig, hat, and high heels.

Upon gaining entry into the concert, defendant waited until Dam Vinh Hung began his performance. Defendant then approached the stage waiving fake lotus flowers to attract Dam Vinh Hung's attention. When the singer bent down to take the flowers, defendant sprayed him in the face with either pepper spray or a combination of fish sauce and perfume, causing the singer to scream.

Defendant was subdued by a private security guard and, after a struggle, arrested by the police. During a search incident to defendant's arrest, police discovered two canisters of pepper spray. No bottles of perfume were recovered.

Following the incident, Dam Vinh Hung suffered red, irritated skin (particularly on his face, arms, and chest); difficulty breathing; coughing; bloodshot and tearing eyes; and a runny nose. Members of the audience who were in close proximity to the stage experienced similar symptoms.

### B. TRIAL PROCEEDINGS

#### 1. Jury Selection

One of the prospective jurors was a Vietnamese man named Tung Vo. During voir dire, Tung Vo stated he was born in Vietnam, moved to the United States in 1978, and was a software engineer. The People exercised a peremptory challenge and dismissed Tung Vo. Defendant's counsel made a timely *Batson/Wheeler* motion, which the court allowed him to argue outside the presence of the other potential jurors.

Defendant argued that Tung Vo was the only potential juror in the venire of Vietnamese descent and that the People's removal of the potential juror constituted impermissible group bias. The court denied defendant's motion, determining that defendant had not made a prima facie showing of group bias. Even though the court denied defendant's motion, it offered the People an opportunity to provide a reason for their peremptory challenge. The prosecutor pointed to body language, including an inability to make eye contact, that led her to believe that Tung Vo would be unable to deliberate effectively with other jurors.

## 2. The Substance Sprayed

A dispute arose at trial regarding the substance defendant sprayed in the face of the singer Dam Vinh Hung. Though defendant admitted spraying the singer in the face, he testified that the substance was a combination of fish sauce and perfume, meant to make the singer smell bad. The People maintained that the substance was pepper spray. In support, the People relied on the discovery of two canisters of pepper spray during a search of defendant incident to his arrest. The People also noted the symptoms suffered by both the singer and audience members who were near the stage. Officer Gary Hosman of the Santa Clara Police Department testified that, based on his training regarding chemical agents, the symptoms were consistent with the effects of a chemical spray such as pepper spray.

In addition to the physical evidence, the People relied on defendant's admission that he had sprayed the singer with pepper spray. Officer Kiet Nguyen of the Santa Clara Police Department, who interviewed defendant shortly after the spraying incident, testified that the defendant "explained that he . . . sprayed pepper spray at the performer." The People also played a recording of an interview between defendant and a reporter in Vietnamese that was translated at trial for the jury. During the interview, defendant stated that he sprayed the singer in the eyes with pepper spray. During his testimony, defendant claimed the inconsistency reflected a tactical lie on his part. He claimed that

he waited until the trial to disclose that it was fish sauce and perfume rather than pepper spray "to unmask the conspiracy" and show "all the [victims'] testimony so far is a [*sic*] perjury."

### 3. Jury Instructions

The trial court instructed the jury on the definition of "tear gas" for purposes of section 375 and former section 12403.7. The instructions for both statutes included the same definition of tear gas: "Tear gas is all liquid, gaseous or solid substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispersed in the air. [¶] Oleoresin capsicum (pepper spray) is 'tear gas.' " Neither party objected to this definition or sought any further clarification.

The jury convicted defendant of misdemeanor assault (§ 241, subd. (a)); felony use of tear gas, not in self-defense (former § 12403.7, subd. (g)); felony willful use of tear gas in a place of public assemblage (§ 375, subds. (a), (d)); felony second-degree burglary (§§ 459, 460, subd. (b)); and misdemeanor resisting, delaying, or obstructing a peace officer (§ 148, subd. (a)(1)). The trial judge suspended imposition of sentence for three years and placed defendant on probation with conditions that included serving six months in custody. This timely appeal followed.

## II.       DISCUSSION

### A.    *BATSON/WHEELER* MOTION

The People exercised a peremptory challenge to excuse prospective juror Tung Vo. Defendant objected, arguing that the People impermissibly excused him because he was Vietnamese. After hearing argument from defendant and the People, the court denied the challenge, determining that defendant failed to make a prima facie showing of group bias. The court offered the People a chance to explain the reason for the peremptory challenge to Tung Vo, but made clear the explanation was "optional" because the court had already denied the challenge for lack of a prima facie showing. On appeal, defendant argues that he made an adequate prima facie showing of purposeful

discrimination and that the People's explanation failed to provide an adequate race-neutral justification for the peremptory challenge.

Peremptory challenges that remove prospective jurors based solely on race violate both the state and federal constitutions. (*People v. Watson* (2008) 43 Cal.4th 652, 670.) The United States Supreme Court has established a three-step procedure for trial courts to follow when confronted with a *Batson/Wheeler* challenge. Step one requires the defendant to make a prima facie " 'showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.' " (*Johnson v. California* (2005) 545 U.S. 162, 168, quoting *Batson, supra,* 476 U.S. at pp. 93-94.) This prima facie requirement is satisfied "so long as the sum of the proffered facts gives 'rise to an inference of discriminatory purpose.' " (*Johnson, supra,* at p. 169, quoting *Batson, supra,* at p. 94.) If the trial court determines the defendant has made a prima facie showing, "the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes." (*Johnson, supra,* at p. 168, quoting *Batson, supra,* at p. 94.) Finally, if the People meet this burden, " 'the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination.' " (*Johnson, supra,* at p. 168, quoting *Purkett v. Elem* (1995) 514 U.S. 765, 767.)

When, as here, a trial court finds a defendant has failed to make a prima facie showing giving rise to an inference of discriminatory purpose, we "undertake an independent review of the record to decide 'the legal question whether the record supports an inference that the prosecutor excused a juror on the basis of race.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 614.) In *Wheeler,* the California Supreme Court identified a number of factors that, when present, might support an inference of discriminatory purpose, including: (1) the striking by the prosecution of all or almost all individuals of a certain identified group from the venire; (2) a prosecutor's use of a disproportionate number of peremptory challenges against an identified group; (3) that the individuals excused via the prosecutor's peremptory challenges share no defining

characteristics apart from their status as members of the identified group; and (4) that defendant is part of the group identified with the individuals who have been excused by the prosecutor's peremptory challenges, particularly when the "alleged victim is a member of the group to which the majority of the remaining jurors belong . . . ." (*Wheeler, supra,* 22 Cal.3d at pp. 280-281.)  Additionally, "the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose." (*Batson, supra,* 476 U.S. at p. 97, italics omitted.)

After an independent review of the record, we conclude the record does not support an inference that the People excused Tung Vo due to his race.  An inference of discriminatory purpose can be supported by a showing that most or all of the potential jurors of an identifiable group are excused.  (*Wheeler, supra,* at p. 280.)  Defendant's trial counsel claimed this factor was present because Tung Vo was the only member "of the jurors who have been seated in the jury box" of Vietnamese descent.  As the trial court correctly noted, however, this claim was inaccurate or at least misleading because there were two other Vietnamese potential jurors who had been previously excused for cause. The prosecutor stated she "believe[d] there are still other Vietnamese Americans" in the jury pool.  When asked whether he wished to respond to that statement, defendant's counsel declined, submitting instead on his prior argument that a prima facie showing can be made even when only a single potential juror is removed.

Even if there were no additional potential jurors in the jury pool of Vietnamese descent (which would mean the prosecutor excused the only remaining potential juror of Vietnamese descent when she exercised a peremptory challenge to excuse Tung Vo), the prosecutor's action, standing alone, does not support an inference of purposeful discrimination.  While " 'the exclusion of a single prospective juror may be the product of an improper group bias . . . , the challenge of one or two jurors can rarely suggest a *pattern* of impermissible exclusion.' " (*People v. Bell* (2007) 40 Cal.4th 582, 598 (*Bell*).)

Thus, the California Supreme Court has held that the exclusion of most or all members of an identifiable group when there are only a few members of that group in the jury pool, without more, does not support an inference of discriminatory purpose. (*People v. Bonilla* (2007) 41 Cal.4th 313, 342-343 [excusing two of two African Americans out of a 78-person juror pool insufficient for prima facie case]; *Bell, supra,* at pp. 597-598 [excusing two of three African Americans insufficient for prima facie case, stating "the small absolute size of this sample makes drawing an inference of discrimination from this fact alone impossible"].)

The other factors similarly do not support an inference of purposeful discrimination. The People exercised eight peremptory challenges. Based on the record before us and defendant's representations, only one of the eight individuals excused by the People was of Vietnamese descent. This does not demonstrate a disproportionate number of challenges used to dismiss individuals of Vietnamese descent or that the People excused jurors with no shared characteristics other than a shared heritage. Further, no aspect of the prosecutor's questioning during voir dire suggested any discriminatory purpose. Finally, while both the defendant and Tung Vo are of Vietnamese descent, the victim in this case is also Vietnamese. Because we see no support for an inference of discriminatory purpose in the peremptory challenge to Tung Vo, defendant's *Batson/Wheeler* motion was properly denied.

**B. PROSECUTION UNDER BOTH FORMER SECTION 12403.7 AND SECTION 375**

Defendant moved for a judgment of acquittal, contending that former section 12403.7, subdivision (g), which prohibited the use of tear gas unless it is used in self-defense, is a special statute that should serve as an exception to section 375, subdivisions (a) and (d), which proscribe *any* use of tear gas in a place of "public assemblage."

" 'It is the general rule that where the general statute standing alone would include the same matter as the special act, and thus conflict with it, the special act will be considered as an exception to the general statute whether it was passed before or after

such general enactment.' . . . " (*In re Williamson* (1954) 43 Cal.2d 651, 654 (*Williamson*.) The "*Williamson* rule" can apply even in situations where the general statute contains an element not found in the special statute. Where the elements do not line up perfectly, "courts must consider the context in which the statutes are placed" and apply the rule "[i]f it appears from the entire context that a violation of the 'special' statute will necessarily or commonly result in a violation of the 'general' statute . . . ." (*People v. Jenkins* (1980) 28 Cal.3d 494, 502 (*Jenkins*), italics omitted.)

As in effect at the time of the pepper spray incident, former section 12403.7 generally allowed adults[4] to possess tear gas but prohibited its use for anything other than self-defense. (Former § 12403.7, subd. (g).) A conviction for the non-self-defense use of tear gas was a "wobbler." (*Ibid.*) As it did at the time of defendant's offense, section 375 prohibits *any* use of tear gas in a place of "public assemblage," regardless of whether that use is in self-defense. (§ 375, subds. (a), (d).) The version of section 375 in effect at the time of the pepper spray incident made the willful use of tear gas in a place of public assemblage a felony only.[5] (Former § 375, subd. (d).)

Defendant characterizes section 375 as a general statute because it prohibits *any* use of tear gas and former section 12403.7 as a special statute because it prohibited only *non-self-defense* use of tear gas. However, section 375 could be characterized as the special statute since it prohibits the use of tear gas only in places of public assemblage, whereas former section 12403.7 prohibited the non-self-defense use of tear gas in any

_____

[4] The law prohibited possession of tear gas by individuals in any of the following categories: (1) felons; (2) individuals convicted of assault; (3) individuals convicted of misuse of tear gas; (4) addicts; and (5) minors. (Former § 12403.7, subds. (a)-(d).)

[5] As currently in force, the willful use of tear gas in a place of public assemblage continues to be a felony, punishable pursuant to section 1170, subdivision (h). (§ 375, subd. (g).)

location. We will nonetheless assume former section 12403.7 is a special statute for purposes of our analysis.

The elements of the two statutes are not identical because, unlike section 375, a violation of former section 12403.7 did not require the use of tear gas to occur in a place of public assemblage. (Compare § 375, subd. (a) with former § 12403.7, subd. (g).) Thus, the *Williamson* rule would only bar defendant's prosecution under section 375 if, considering the statutes in their legislative contexts, a violation of former section 12403.7 would "necessarily or commonly result in a violation" of section 375. (*Jenkins, supra,* 28 Cal.3d at p. 502.) Neither party disputes that defendant's conduct in this case violated the elements of both section 375 and former section 12403.7 because he used pepper spray at the Santa Clara Convention Center, a place of public assemblage, and did not do so in self-defense. Comparing the two statutes, we conclude that a violation of former section 12403.7 will not necessarily or commonly result in a violation of section 375.

Decisions precluding prosecution for a general statute due to a conflict with a special statute have typically involved the interaction between broad, general statutes and narrowly-drafted statutes prohibiting specific conduct in particular scenarios. Examples include: (1) prosecution for the use of false statements to obtain unemployment benefits precluded prosecution under the general forgery statute (*People v. Ruster* (1976) 16 Cal.3d 690, 698-699, disapproved on another ground by *Jenkins, supra,* 28 Cal.3d at p. 503, fn. 9); (2) prosecution for welfare fraud precluded prosecution under the general theft statute (*People v. Gilbert* (1969) 1 Cal.3d 475, 479-481); and (3) prosecution for filing a false vehicle theft report precluded prosecution generally for filing a false document (*People v. Murphy* (2011) 52 Cal.4th 81, 94).

Unlike the foregoing authorities, scenarios involving conduct that would violate former section 12403.7 but not section 375 are readily discernible. Because former section 12403.7 proscribed the non-self-defense use of tear gas in *any* location, individuals could commonly violate the statute without violating section 375. For

example, in order to commit any number of crimes, a person could use tear gas to immobilize a victim in a residence or other location not used for public assemblage. Thus, this case is more similar to situations where courts have determined that, although two statutes overlap, prosecution is nonetheless available for both offenses. (See *People v. Walker* (2002) 29 Cal.4th 577, 585-587 [statute making it a felony to willfully fail to appear after release on bail is reconcilable with a statute providing a sentencing enhancement for a felony committed while released on bail]; *People v. Glenos* (1992) 7 Cal.App.4th 1201, 1209-1210 [statute prohibiting aiding and abetting manufacture of a controlled substance is reconcilable with statute prohibiting making space available for manufacture of a controlled substance]; *People v. Sainz* (1999) 74 Cal.App.4th 565, 571-574 [statute providing sentence enhancement for causing great bodily injury while driving under the influence is reconcilable with general sentencing enhancement for inflicting great bodily harm].) Because we find that a violation of former section 12403.7 does not necessarily or commonly violate section 375, they are reconcilable and defendant's prosecution for both offenses was proper.

Our conclusion is not affected by *People v. DeLaCruz* (1993) 20 Cal.App.4th 955 (*DeLaCruz*), relied on by defendant. In *DeLaCruz,* a security guard for a fast food restaurant who used pepper spray against a loiterer was convicted of violating both former section 12403.7 and section 375. (*DeLaCruz, supra,* at pp. 957-958.) On appeal, the Fifth Appellate District held that prosecution under a different version of former section 12403.7 (preceding the version at issue here) precluded the security guard's prosecution under section 375. (*DeLaCruz, supra,* at p. 962.) Crucial to that holding, however, was that the version of section 12403.7 at issue required individuals who wanted to possess tear gas for self-defense to complete a certification process. (*DeLaCruz, supra,* at p. 961.) According to the court, "authorizing use of tear gas by appropriately trained and certified persons without regard to the place of use[] impliedly reflects awareness that such use will frequently be necessary in places of public

assemblage." (*Id.* at p. 962.)  This, according to the court, showed the Legislature's intent that a violation of that version of section 12403.7 would necessarily or commonly violate section 375.  (*DeLaCruz, supra,* at p. 962.)

Unlike the version of former section 12403.7 at issue in *DeLaCruz*, at the time of the pepper spray incident here no such certification requirement existed for possession of tear gas for self-defense.  Instead, except for a few categories of people (see fn. 4, *ante*), all adults were entitled to possess tear gas for self-defense.  That amendment removed a key justification for the *DeLaCruz* court's conclusion.  For this reason, we find *DeLaCruz* distinguishable.

Finally, because the trial court suspended imposition of sentence, we need not determine whether defendant's sentence would be affected by section 654.  (*People v. Wittig* (1984) 158 Cal.App.3d 124, 137 ["Because sentence was not imposed on either defendant, there is no double punishment issue."].)

### C.    JURY INSTRUCTIONS

Defendant argues that the phrase "temporary physical discomfort," as used in the instructions defining tear gas for purposes of stating the elements of former section 12403.7 and section 375, was ambiguous and required clarification.  He makes this argument in light of his defense that the substance he sprayed on the singer was a combination of fish sauce and perfume rather than pepper spray.  Defendant claims the trial court had a sua sponte duty to clarify the meaning of "temporary physical discomfort."  Alternatively, he contends his trial counsel provided ineffective assistance by failing to seek clarification of the phrase.

#### 1.  The Trial Court Had No Sua Sponte Duty to Clarify Its Instruction

" '[A] trial court must instruct on general principles of law that are . . . necessary to the jury's understanding of the case.' " (*People v. Roberge* (2003) 29 Cal.4th 979, 988.)  This obligation includes providing appropriate guidance "when a statutory term 'does not have a plain, unambiguous meaning,' has a 'particular and restricted

meaning' ([Citation]), or has a technical meaning peculiar to the law or an area of law." (*Ibid.*; see also *People v. Estrada* (1995) 11 Cal.4th 568, 574.) "[A] claim that a court failed to properly instruct on the applicable principles of law is reviewed de novo." (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111.)

The trial court instructed the jury that, for purposes of section 375 and former section 12403.7, "[t]ear gas is all liquid, gaseous or solid substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispersed in the air. [¶] Oleoresin capsicum (pepper spray) is 'tear gas.'" Because both of the statutes required a finding that the substance defendant used was "tear gas," the definition was a general principle necessary to the jury's understanding. We disagree with defendant's claim that the phrase "temporary physical discomfort" is ambiguous, particularly given the facts of this case.

Defendant poses a series of rhetorical questions that purport to illustrate the ambiguity of the phrase "temporary physical discomfort," asking whether comparatively minor symptoms such as "temporary olfactory discomfort" from smelling fish sauce would meet the definition. If the victims of defendant's attack only suffered this type of effect, a clarifying instruction might have been in order. However, both the singer and members of the audience close to the stage experienced a number of more serious physical symptoms, including skin irritation, breathing difficulties, coughing, and bloodshot and tearing eyes. Given these symptoms, we are satisfied that the phrase "temporary physical discomfort" required no further definition and therefore created no duty on the trial court to provide clarification.

## 2. Trial Counsel Was Not Ineffective For Failing to Seek Clarification

Defendant argues his trial counsel's failure to seek a clarifying instruction, which forfeited defendant's claim on appeal, amounted to ineffective assistance of counsel. (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1236 [failure to seek clarification of legally correct jury instruction in trial court forfeits claim on appeal].) To prevail,

defendant must show his trial counsel's performance was deficient and that the deficiency prejudiced defendant. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216-217.) To prove prejudice, defendant must affirmatively show a reasonable probability that, but for his trial counsel's errors, the result would have been different. (*Id.* at pp. 217-218.) A reasonable probability is one " 'sufficient to undermine confidence in the outcome.' " (*Id.* at p. 218, quoting *Strickland v. Washington* (1984) 466 U.S. 668, 693-694.) Finally, "[i]f a claim of ineffective assistance of counsel can be determined on the ground of lack of prejudice, a court need not decide whether counsel's performance was deficient." (*In re Crew* (2011) 52 Cal.4th 126, 150, citing *Strickland, supra,* at p. 697.)

Defendant's ineffective assistance claim must fail because he cannot show prejudice based on his trial counsel's allegedly ineffective assistance. As discussed above, both the singer and nearby audience members suffered serious symptoms as a result of defendant's attack. We find no reasonable probability that a clarifying instruction would have caused the jury to determine that the symptoms did not amount to "temporary physical discomfort." Because there is no reasonable probability the result of defendant's trial would have been different had trial counsel sought and received a clarifying instruction, defendant's ineffective assistance claim fails.

## III.     DISPOSITION

The judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P.J.

_____

Márquez, J.